UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | | |
|---|---|---|
| LAWYERS TITLE INSURANCE CORPORATION, | ) ) ) | 1:08-CV-00275 Judge Henry H. Kennedy, Jr. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MERIT TITLE COMPANY, LLC, et al. | ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY

NOW COME Defendants Merit Title Company, LLC ("Merit") and Brenda L. Hopkins who move this Court to dismiss all counts of the Complaint filed by Plaintiff. In support of their motion, Defendants incorporate the accompanying memorandum as state as follows:

1.    The same substantive issues that are raised before this Court are presently pending before the Superior Court of the District of Columbia in the matter styled Tucker v. Swain, 05-0004890 (D.C. Superior Court).[1]  Parallel litigation of factually related cases in separate fora is inefficient.  Indeed, separate parallel proceedings have long been recognized as a judicial inconvenience. Columbia Plaza Corp. v. Securities Nat'l Bank, 525 F.2d 620, 626 (D.C. Cir. 1975) ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to

---

[1]    See Answer and Cross-Claim of Defendants S.F.C., LLC, Southern Management Corporation Retirement Trust, David Hillman, Bruce Magazine, and Susan Magazine to First Amended Complaint (attached as Exhibit "A").

separate litigation of identical issues should be avoided.") (footnotes omitted).    For

reasons of wise judicial administration, this Court is granted vast discretion to dismiss or

stay a pending suit in favor of a consolidated action in another forum.  See Colorado

River Water Conservation Dist. V. United States, 424 U.S. 800 (1976).  The Colorado

River abstention doctrine requires the Court to dismiss this federal action in favor of the

concurrent action before the Superior Court of the District of Columbia.

2.    On December 29, 2006, S.F.C., LLC, ("SFC") and Southern Management

Corporation Retirement Trust ("SMC") — non-parties to this action, but parties to the

Tucker case — filed a Cross-Claim asserting negligence (Count I) claims against Merit

for purportedly failing to identify or prevent the fraudulent real estate transaction that

underlies the Tucker litigation.  See Exhibit "A" at ¶¶ 1-16.  Upon information and belief,

Plaintiff Lawyers Title Insurance Company ("Lawyers Title") undertook its contractual

obligation to defend SFC and SMC against the principal demands asserted by Plaintiffs

Eugene and Josie Tucker.  See Complaint at ¶ 16.  Further, Paragraphs 16 & 17 of the

Complaint reveal that:

> 16.    Based on the strength of the Tuckers' summary judgment motion,
> Lawyers Title decided to discontinue the defense and pay the
> Lender's loss.  **It negotiated a $200,000 settlement with SFC,**
> which was represented by Bruce Magazine.  It then attempted to
> settle with SMC for $275,000.  This amount represented the
> appraised value of the property ($475,000) less the amount of the
> SFC first mortgage ($200,000).
>
> 17.    **While SMC initially refused Lawyers Title's settlement check,**
> **ultimately SMC accepted the $275,000 payment,** on the
> condition that acceptance of the payment would not preclude SMC
> from suing Lawyers Title for a larger payment.

(Emphasis added).  Thus, at some unspecified time between December 2006 and March

2008, Lawyers Title indemnified both SFC & SMC upon claims they currently assert

against Merit through the Cross-Claim filed in <u>Tucker</u>. Notwithstanding the fact that they have been made whole, neither SFC nor SMC has offered to voluntarily dismiss their Cross-Claim against Merit.

3.    On March 10, 2008, Lawyers Title filed the instant Complaint asserting breach of contract (Count I) and negligence (Count II) clams against Defendants. Thus, parallel proceedings ensue in both district court and in the Superior Court of the District of Columbia. <u>See</u> Complaint at ¶ 15. The only real distinction between the two cases is in the complaining parties — SFC and SMC in the <u>Tucker</u> case, and Lawyers Title in the instant federal action. Each claimant seeks the *same* compensation for Defendants' purported negligence in failing to detect or prevent the *same* fraudulent real estate transaction that underlies both <u>Tucker</u> and this lawsuit. <u>See</u> Complaint at ¶¶ 20 & 26; <u>see also</u> Cross-Clam at ¶¶ 1-16. The negligence allegations are the same, and any available remedies are identical.

4.    Despite the district court's obligation to exercise jurisdiction it has been granted, the Supreme Court has articulated various exceptions setting forth when a federal court can abstain from exercising jurisdiction in circumstances of parallel, duplicative litigation in the interest of sound "judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Colorado River</u>, 424 U.S. 800, 817. In <u>Colorado River</u>, the United States brought suit in federal court seeking a declaration of water rights on various federal lands. One of the defendants subsequently moved to join the United States as a party to a state-court proceeding to adjudicate all

claims made by the United States in federal court.[2] After the United States was served, other defendants moved to dismiss the federal action for lack of subject-matter jurisdiction because the doctrine of abstention required deference to the state court. The Tenth Circuit reversed, holding that the district court had jurisdiction and that abstention was inappropriate. The Supreme Court reversed the Tenth Circuit and reinstated the stay. See id. at 821. The Supreme Court has articulated the following factors that district courts need to consider in determining whether a case requires abstention under the Colorado River doctrine:

1)   whether one court assumed jurisdiction over property first;[3]

2)   the inconvenience of the federal forum;[4]

3)   the desirability of avoiding piecemeal litigation;

4)   the order in which the courts assumed jurisdiction;

5)   whether the case involves federal law; and

6)   whether the state forum will adequately protect the interests of the parties.

See id. at 818; see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 23-26 (1983).   The presence or absence of any one factor is not necessarily

---

[2]   Simultaneous with the filing of the instant Motion to Dismiss, Defendants are filing a motion to join Lawyers Title as a party to the Tucker v. Swain proceeding pending in Superior Court.

[3]   This case does not involve jurisdiction over property. Accordingly, the first factor has no bearing on the Court's abstention determination.

[4]   The D.C. Superior Court and this Court are physically located only a few hundred feet apart.   Thus, the second factor has no bearing on the Courts abstention determination. See Hurley v. Helig, 28 F.Supp. 2d 33, 35 (D.D.C. 1998) (Urbina, J.) (holding that there is no inconvenience of federal forum because the Superior Court and this court are in physical proximity to each other).

determinative. Rather, a carefully considered judgment by the court, taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. See Hurley v. Helig, 28 F.Supp. 2d 33, 35 (D.D.C. 1998).

## DISMISSAL WILL AVOID PIECEMEAL LITIGATION

5.      Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.  Generally, the desirability of avoiding piecemeal litigation favors abstention. If proceedings are allowed to continue in this Court, messy piecemeal litigation would result because the parties would litigate identical questions of law applied to identical facts in two separate fora. This could lead to contradictory — or, at a minimum, irreconcilable — rulings. See id. Only one court should decide the identical issues presented by the respective Complaint and Cross-Claim, and the more comprehensive nature of Tucker favors abstention in this case.  Notably, this federal action is not a "mirror image" of the Superior Court case because any final decision rendered by this Court will not dispose of all the parties' claims in the Tucker case.  Even if proceedings continued in this case, the remaining Tucker plaintiffs and cross-plaintiffs will not be bound by the Court's decision.  In sum, the desirability of avoiding piecemeal litigation in the instant case strongly favors abstention.

## THE ORDER OF JURISDICTION FAVORS DISMISSAL

6.      As previously stated, the Tucker Cross-Claim was filed in the D.C. Superior Court on December 29, 2006. Thus, the Superior Court obtained jurisdiction over this matter more than fourteen (14) months before the Complaint was filed in the instant case.

In addition, Judge Lynn Leibovitz has made more progress in <u>Tucker</u> than the Court has made in this case. Moreover, the Superior Court has much greater familiarity with the issues because Judge Leibovitz has already ruled on several motions in the <u>Tucker</u> case. See Complaint at ¶ 16 (Lawyers Title admittedly settled in response to the summary judgment motion filed by the Tuckers). Further, Judge Leibovitz has received numerous filings and conducted several hearings on this matter and, therefore, has at least preliminarily begun to address the underlying legal issues present in both cases. Thus, the order of jurisdiction favors abstention.

## SOURCE OF LAW

7.    Generally, litigation involving a federal law weighs against a federal court's abstention. <u>See Moses H. Cone</u>, 460 U.S. at 23-24. Though diversity jurisdiction *technically* exists because the citizens involved in this lawsuit are completely diverse, that fact alone does not mandate this Court's exercise of jurisdiction. <u>See Delaney v. Capitol Hill Anesthesia Assoc., P.C.</u>, 602 F. Supp. 1069 (D.D.C. 1985). Diversity jurisdiction was created only by the happenstance that Plaintiff is a Virginia corporation, Defendant Merit Title Company is a limited liability company registered in the District of Columbia, and Brenda Hopkins is a Maryland citizen. Although the parties are diverse with respect to their geographic residences, they all have embraced the District of Columbia through their affiliation with Merit. This is a *local* dispute involving garden-variety questions of state law and policy — issues that the Superior Court is amply qualified to adjudge. Indeed, Plaintiff's case centers on whether Defendants breached their Agency Agreement with Lawyers Title through purported negligence in "failing to detect or prevent the fraudulent real estate transaction that gives rise to this lawsuit." <u>See</u>

Complaint at ¶¶ 20 & 26. This is not the type of controversy that diversity jurisdiction was created to serve. Because this dispute is devoid of any questions of federal law and likewise, because diversity jurisdiction was created by mere happenstance, abstention is warranted under the source of law factor.

## ADEQUACY OF SUPERIOR COURT TO PROTECT RIGHTS

8.    The Superior Court has before it the same negligence issues that are raised in the Complaint, and these issues will be decided in the ongoing Superior Court litigation in due course. In light of its compromise with SFC and SMC, Lawyers Title "stands in the shoes" of its insureds and is, therefore, an indispensable party to the Cross-Claim pending in Tucker. Once joinder is accomplished through Defendants' motion, Lawyers Title will have ample opportunity to present all its negligence and breach of contract claims in Superior Court. In any event, given the fact that it actively undertook its duty to defend SFC and SMC, Lawyers Title can hardly establish that it has not been directly involved in the Tucker litigation. See Complaint at ¶¶ 15 – 17. Moreover, Plaintiff cannot establish that the Superior Court would have any difficulty interpreting District of Columbia law or, otherwise, would be unable to ensure that the parties are not prejudiced in any way. Because this case involves only local law, the Superior Court will be in no less a position than this court to adequately protect the interests of the parties. Thus, this last factor favors abstention.

## CONCLUSION

9.    There is simply no compelling rationale to intervene in, interfere with, or, otherwise duplicate the orderly judicial process that is ongoing in Superior Court. See Capitol Hill Hosp. v. District of Columbia, 769 F.Supp. 16 (D.D.C. 1991). Instead, the

Superior Court should be permitted to decide all issues before it regarding Defendants' purported negligence.    Because four of the six factors under the <u>Colorado River</u> abstention doctrine overwhelmingly weigh in favor of abstention (and two are neutral), this Court must exercise its discretion to decline jurisdiction for the purpose of judicial economy.

Wherefore, Defendant's Motion to Dismiss should be granted. In the alternative, the cause should be stayed until the resolution of the case currently underway in the District of Columbia Superior Court.

Respectfully submitted,
Merit Title, LLC
Brenda Hopkins, Esquire

Kenneth D. Bynum
DC Bar No.: 424515
Bynum and Jenkins, PLLC
901 North Pitt Street, Suite 320
Alexandria, VA 22314
(703)549-7211

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I serve by first class mail, postage pre-paid, Defendant Merit Title and Brenda Hopkin's Motion to Dismiss, or in the Alternative, to Stay this 18th day of March, 2008 to: Raighne C.Delaney, Bean, Kinney & Korman, PC, 2000 North 14th Street, Suite 100, Arlington, VA 22201.

Kenneth D. Bynum

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| LAWYERS TITLE INSURANCE CORPORATION, | ) ) ) | 1:08-CV-00275 Judge Henry H. Kennedy, Jr. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MERIT TITLE COMPANY, LLC, et al. | ) ) | |
| Defendants. | ) ) ) | |

## **PROPOSED ORDER**

This matter came before the court upon Defendant Merit Title and Brenda Hopkins Motion to Dismiss and Plaintiff's Opposition thereto. Premises considered, Defendant's Motion is GRANTED and this matter is DISMISSED.

SO ORDERED this      day of      2008.

_____
Judge Henry Kennedy
Associate United States District Judge

Copies to:
Raighne C.Delaney
Bean, Kinney & Korman, PC
2000 North 14th Street, Suite 100
Arlington, VA 22201.

Kenneth D. Bynum
Bynum and Jenkins, PLLC
901 North Pitt Street, Suite 320
Alexandria, VA 22314

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

LAWYERS TITLE INSURANCE
CORPORATION
5600 Cox Road
Glen Allen, VA 23060

       Plaintiff,

  v.

MERIT TITLE COMPANY, LLC,

Serve:

Brenda L. Hopkins
Director
3724 12th Street, N.E.
Washington, D.C. 20017

BRENDA L. HOPKINS,

Serve:

Brenda L. Hopkins
3724 12th Street, N.E.
Washington, D.C. 20017

       Defendants.

## **COMPLAINT**

Plaintiff Lawyers Title Insurance Corporation ("Lawyers Title"), by and through counsel,

for its complaint against Defendants Merit Title Company, LLC ("Merit Title") and Brenda

Hopkins hereby states as follows:

LAW OFFICES
BEAN, KINNEY & KORMAN
A PROFESSIONAL CORPORATION
2300 WILSON BOULEVARD, 7TH FLOOR
ARLINGTON, VIRGINIA, 22201

EXHIBIT
A
ALL-STATE LEGAL®

### Introduction

1.  This lawsuit is for damages resulting from Merit Title's and Brenda Hopkin's breach of the Agency Agreement with Lawyers Title and breach of the standard of care for a title company and settlement attorney in conducting a real estate transaction.

### Parties

2.  Plaintiff Lawyers Title is a Virginia Corporation, with its principal place of business in Virginia.

3.  Defendant Merit Title has its principal place of business in Washington, DC and College Park, Maryland.  Merit Title is the title company that conducted the closing that involved and conveyed the forged and fraudulent deeds.

4.  Defendant Brenda Hopkins, upon information and belief, resides in Washington, D.C. Brenda Hopkins is the sole member of Merit Title and is the attorney who actually conducted these closings.

### Jurisdiction and Venue

5.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.  Venue is proper in this Court because the sale of real property at issue is located in the District of Columbia.

### Facts

7.  On January 20, 1992, Brenda Hopkins became a Lawyers Title agent. A copy of her Agency Agreement, with all amendments, is attached as **Exhibit 1**.

2

8.    By Amendment No. 4, on December 6, 2002, the name of the agent was changed to Merit Title Company, LLC.

9.    By Amendment No. 7, on September 30, 2005, Merit Title's policy issuing limit was increased from $350,000 to $750,000.

10.    Under Section 4 of the Additional Terms and Conditions to the Agency Agreement, Merit Title agreed that:

> "Agent shall be liable and agrees to indemnify and save harmless Principal for all attorney's fees, court costs, expenses, liability, damage, and loss or aggregate of losses resulting from acts or omissions of Agent, including. . . ."

11.    On February 21, 2005, Lion Real Estate Development & Management, LLC ("Lion"), owned by Steven Hetrick ("Hetrick") purportedly acquired title to 1819 10th Street, NW, Washington, D.C. ("Property") from Eugene and Josie Tucker (the "Tuckers"). Imposters appeared as the Tuckers and presented fake driver's licenses. To release the mortgages on the property, someone filed false Certificates of Satisfaction in the land records. Brenda Hopkins of Merit Title closed the transaction.

12.    On May 13, 2005, Brenda Hopkins at Merit Title closed the sale of the Property from Lion to David W. Swain ("Swain"). The purchase price was $810,000. Swain financed the purchase with three mortgage loans: (1) first mortgage loan from SFC, LLC ("SFC") in the amount of $200,000; (2) second mortgage loan from Southern Management Corporation Retirement Trust ("SMC") in the amount of $500,000; and (3) third mortgage from Lion in the amount of $110,000.

13. Merit Title issued Lawyers Title policies to SFC and SMC. The deeds of trust was worthless because of a forged deed in Swain's chain of title.

14. The true owners of the Property were Eugene and Josie Tucker. Someone forged their signatures on a deed, dated February 21, 2005, purporting to convey the property to Lion. Merit Title closed the purported sale from the Tuckers to Lion. Someone arranged for imposters to attend the closing and to sign the deed for the Tuckers. Three months later, Merit Title closed the "sale" from Lion to Swain.

15. The Tuckers subsequently sued Swain and his lenders to clear the title. Tucker v. Swain, 05-0004890 (D.C. Superior Court).

16. Based on the strength of the Tuckers' summary judgment motion, Lawyers Title decided to discontinue the defense and to pay the Lender's loss. It negotiated a $200,000 settlement with SFC, which was represented by Bruce Magazine. It then attempted to settle with SMC for $275,000. This amount represented the appraised value of the property ($475,000), less the amount of the SFC first mortgage ($200,000).

17. While SMC initially refused Lawyers Title's settlement check, ultimately, SMC accepted the $275,000 payment, on the condition that acceptance of the payment would not preclude SMC from suing Lawyers Title for a larger payment.

18. On February 8, 2008, Plaintiff made a demand on Defendants to pay $475,000 to indemnify Lawyers Title as is required under the contract. Defendants failed to indemnify the Plaintiff.

4

## COUNT I: BREACH OF CONTRACT

19.     Plaintiff re-alleges paragraphs 1 through 22 herein.

20.     Defendants Merit Title and Brenda Hopkins were in breach of contract inter alia in that they failed to identify the fraudulent real estate transaction and failed to prevent the fraudulent real estate transaction.

21.     Defendants Merit Title and Brenda Hopkins have breached the Agency Agreement in that the agreement requires Merit Title and/or Brenda Hopkins to indemnify Lawyers Title for all attorney's fees, court fees, expenses, liability, damage, and losses resulting from acts or omission by Merit Title and/or Brenda Hopkins.

22.     Defendants Merit Title and Brenda Hopkins have failed to indemnify Lawyers Title for the losses that resulted from their acts.

23.     Defendants' breaches proximately caused Lawyers Title to suffer monetary damages in the amount of $475,000, paid to SFC and SMC.

WHEREFORE, the Plaintiff moves this Court for judgment against Defendant Merit Title and Brenda Hopkins, jointly and severally, in the amount of Four Hundred Seventy-Five Thousand and 00/100 Dollars ($475,000), plus attorney's fees and costs Plaintiff has incurred to date.

## COUNT II: NEGLIGENCE

24.     Plaintiff re-alleges paragraphs 1 through 22 herein.

25.     Defendants Merit Title and Brenda Hopkins owed a duty of reasonable care to Lawyers Title to identify fraudulent real estate transactions and to avoid participating in or furthering fraudulent schemes.

5

26. Defendants Merit Title and Brenda Hopkins acted negligently by failing to exercise reasonable care in the closing of the Property.  As a result of their failure to exercise reasonable care, they failed to detect or prevent the fraudulent real estate transaction that gives rise to this lawsuit.

27. The Defendants' negligence proximately caused the Plaintiff to suffer monetary damages in the amount of $475,000, paid to SFC and SMC.

WHEREFORE, the Plaintiff moves this Court for judgment against Defendant Merit Title and Brenda Hopkins, jointly and severally, in the amount of Four Hundred Seventy-Five Thousand and 00/100 Dollars ($475,000), plus attorney's fees and costs Plaintiff has incurred to date.

Respectfully submitted,

Raighne C. Delaney, 454761
Bean, Kinney & Korman, P.C.
2000 N. 14th Street, Suite 100
Arlington, VA 22201
(703) 525-4000
Counsel for Plaintiff

6

01-0860 - 028

# Lawyers Title Insurance Corporation

## AGENCY AGREEMENT

LAWYERS TITLE INSURANCE CORPORATION ("Principal"), a Virginia Corporation and **BRENDA L. HOPKINS, ESQUIRE**

("Agent"), whose office is located in __WASHINGTON, D.C.__ and whose mailing address is __3724 12TH STREET, N.E.__

__WASHINGTON, D.C. 20017__

agree as follows:

**I. Appointment and territory.** Principal appoints Agent its agent solely for the purpose of issuing, on Principal's forms, title insurance commitments, policies and endorsements with reference to real estate located in the __State of Maryland and the District of Columbia__

in accordance with this Agreement of one page and the attached __6__ pages of Additional Terms and Conditions.

**II. Term.** This Agreement shall be for a term of six (6) months from __JANUARY 20, 1992__. Unless either party gives written notice to the other of its election to terminate this Agreement at least one (1) month prior to the end of any term, it shall be automatically extended for additional terms of one (1) year each beginning nat: the end of the initial, term.

**III. Rates.** Agent shall quote, charge and collect title insurance premiums in accordance with the attached Rate Schedule. Principal may revise the Rate Schedule from time to time and deliver such revisions to Agent. Such revisions will become effective on the date designated by Principal.

**IV. Policy issuing limit.** Agent shall not, without written permission of Principal, commit Principal to a risk in excess of $ __200,000.00__, which shall be Agent's policy issuing limit. This amount shall be deemed to include not only the commitment or policy immediately being issued, but also risks, regardless of amount, where Agent knows or has reason to believe that additional title insurance covering substantially the same land (including, without limitation, condominium and time share projects) will be applied for wherein the aggregate liability would exceed five time Agent's policy issuing limit, regardless of liability per policy.

**V. Remittances and commission.** Agent shall retain as its commission __SIXTY__ percent ( __60__ %) of each charge set forth in Paragraph III as the consideration for all services rendered by Agent for Principal under the terms of this Agreement; except Agent shall not be entitled to commission on the amounts, if any, charged for extra-hazardous risks insured by Principal ("extra hazardous risks" are those coverages and endorsements which are not routinely provided and for which additional premiums are charged.) Notwithstanding the foregoing commission arrangement, the minimum payment to Principal for each insurance policy issued (not including simultaneously issued policies) shall be $ __50.00__. Until remitted, the Principal's portion of the charge shall be held in trust by Agent for the benefit of Principal.

Where title orders involving an amount of insurance of more than one million dollars ($1,000,000.00) are directed to Agent by Principal, its subsidiaries or agencies designated by Principal, the commission shall be individually negotiated by Principal and Agent.

If the title insurance premium is paid to Principal or one of its subsidiaries on any order, instead of to the Agent, then Agent will be sent the portion of the premium (commission) due it.

**VI. Coinsurance and reinsurance.** In any case where the proposed insured or the Principal deem coinsurance or reinsurance necessary or desirable, the commission to be paid to or retained by Agent shall be computed on the basis of the net amount remaining after subtracting the cost of such coinsurance or reinsurance from the premium for the title insurance issued by Agent.

**VII. Insurance coverage.** Agent shall retain in force at its expense title insurance agent's errors and omissions coverage in the amount of at least $200,000.00. The insurance carrier and the form of said policy shall be acceptable to Principal, and Agent shall furnish to Principal a copy of the policy, a certificate of insurance issued by the carrier, and a statement from the carrier agreeing to give Principal not less than thirty (30) days written notice in the event of change of coverage or cancellation thereof. At the option of Agent, such policy may contain a loss deductible clause up to $2,500.00

WITNESS the hands and seals of Principal and Agent who have executed this Agreement this __20TH__ day of __JANUARY__, 19 __92__.

ATTEST

_Brenda A. Cooke_
Assistant Secretary

ATTEST

Lawyers Title Insurance Corporation

BY: _____ (Seal)
FRANK T. MC CORMICK
Senior Vice President

_Brenda L. Hopkins_
BRENDA L. HOPKINS

Form 91-197 (MD), Rev. 6/4/91                Page 1

PLAINTIFF'S EXHIBIT 1 — ALL-STATE LEGAL

## Additional Terms and Conditions

**1. Limitations on Agent's authority.** Agent shall not, without written approval of Principal:

(a) Commit Principal to a risk which Principal has determined to be an extra-hazardous risk or which Agent knows to be based upon a disputed title;

(b) Adjust any claim for loss for which Principal may become liable;

(c) Accept service of process on Principal, but Agent shall immediately notify Principal by regular mail, at the Principal's last known address, of any attempted service of summons or other process upon Agent. Agent shall also immediately notify Principal of any matter which is or may be a claim against Principal which may come to Agent's attention;

(d) Incur bills, debts, or obligations chargeable to Principal;

(e) Commit Principal to insure title to property in which the Agent (or a member of Agent's immediate family, a partner, a major stockholder or a member of the family of such an individual, or an entity controlled by the Agent) has an interest greater than ten percent (10%);

(f) Vary or change in any manner the printed portions of any commitment, policy, endorsement or other forms furnished Agent by Principal, or commit Principal to any particular interpretation of the terms or provisions thereof;

(g) Issue any commitment, policy or endorsement which insures against or over any matter by reason of an escrow deposit, indemnity agreement, letter of credit, or bond;

(h) Issue a commitment, policy or endorsement unless based on reports or certificates of title made by either attorneys at law approved by Principal (hereinafter termed Approved Attorneys), or on reports or certificates of staff employees of Agent, or on reports of others approved in advance by Principal at Agent's request, on report forms approved by Principal, which reports and certificates shall be supplemented by abstracts of title whenever required by Principal; provided however, that whenever any such report or certificate of title is based on an abstract of title, Agent shall not issue a commitment or policy thereon unless and until the person, firm or corporation which prepared such abstract has also been approved by Principal (abstractors so approved being hereinafter termed Approved Abstracters);

(i) Issue any commitment, policy, or endorsement which has not been countersigned on behalf of Agent, and such countersigning shall be done solely by Agent or by an employee of Agent. Agent shall furnish Principal with the names and signatures of those authorized to countersign on behalf of Agent, and shall promptly notify Principal in the same manner when any such individuals should leave or be added to the employment of Agent. Agent shall not authorize countersignature by anyone unlicensed or unregistered where licensing or registration is required by law or regulation; or

(j) Issue a commitment, policy or endorsement in an amount in excess of the Agent's policy issuing limit as set forth in Paragraph IV.

(k) Commit Principal to provide insurance against mechanics' or materialmen's liens.

**2. Duties of Agent.** Agent shall:

(a) Receive and process applications for title insurance in a timely, prudent, and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules, regulations, bulletins, manuals and instructions of Principal and its subsidiaries;

(b) Keep a separate file on each order for insurance placed with Agent, which file shall contain a copy of the commitment, policy or endorsement if issued and, unless copies are forwarded to Principal, a copy of the title report and all other documents such as certificates of survey, affidavits, waivers of lien, and the like, which were relied upon by the Agent to issue said commitment or policy. Title to all such files shall immediately vest in Principal. Upon termination of this Agreement, Agent shall deliver to Principal the contents of said files, which may not be copied by Agent without Principal's consent;

(c) Furnish Principal in accordance with Principal's instructions title insurance liability reports, and send to Principal a copy of each policy and endorsement issued by said Agent; and remit and pay to Principal all premiums and other sums due Principal pursuant to this Agreement on a monthly basis and in no event later than the fifteenth day of the calendar month following issuance of the policy or endorsement upon which remittance is to be made (or other such reporting basis as designated by Principal) on the forms furnished by Principal. Any sum not remitted promptly when due shall bear interest from its due date until paid at the rate of ten percent (10%) per annum or the rate then in effect for U.S. Treasury Bills (six month term), whichever is greater. For purposes of this Agreement, a remittance will be deemed to have been made when received by Principal at its National Headquarters in Richmond, Virginia or any other office designated by Principal;

(d) Keep a policy register in a form approved by Principal showing the disposition of all policies and other prenumbered forms furnished by Principal. Upon request by Principal, Agent shall furnish a statement accounting for all such forms;

(e) Keep safely in accounts insured by either FDIC or FSLIC separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transactions in which Principal's title insurance is involved, including escrow and settlement funds, and disburse said funds only for the purposes for which same were entrusted;

(1) Maintain, in connection with escrow and settlement funds, individual accounting escrow ledger records listing receipts and disbursements in chronological order and showing the balance of escrow funds at each transaction date, and

(2) Maintain a control account, i.e., a cumulative balance of escrow funds received and disbursed used to determine the total fiducial cash and fiducial liability;

(f) Perform such services and render such assistance as Principal may reasonably request in connection with any claim or litigation on account of any commitment, policy or endorsement issued by Agent or by Principal on behalf of Agent, or on account of any business or act done by Agent, whether or not such claim is made or such litigation is instituted before or after the termination of this Agreement;

(g) Comply with all applicable statutes, rules and regulations relating to the conduct of Agent's business;

(h)    Provide Principal, at its request, copies of audited financial statements of Agent, said statements to be kept confidential by Principal;

(i)    Not adopt or use for any purpose whatsoever, either during or after termination of this Agreement, either the corporate name, "Lawyers Title Insurance Corporation," any equivalent or abbreviated version thereof, or any name so similar that a person using care, caution, and observation that the public uses and may be expected to use would mistake one name for the other;

(j)    Cooperate with the Principal in the performance of quality control reviews of Agent's title insurance activities; *

(k)    Not dispose of a substantial portion of its assets, which would be necessary for the Agent to fulfill its duties as set forth in this Agreement, without first obtaining the consent of Principal or immediately replacing said assets; and

(l)    Actively solicit and diligently devote time and effort to the promotion and development of Principal's title insurance business for the mutual benefit of Principal and Agent. Nonetheless, except as expressly authorized by Principal in writing, it is understood and agreed that no advertising by Agent, whether by business signs, letterheads, newspaper or other means, shall represent or hold Agent out as the general agent or alter ego of Principal, but only that Agent is an authorized commitment and/or policy issuing agent of Principal. Nothing herein, however, shall prevent Agent from using the words "Titles Insured by Lawyers Title Insurance Corporation."

**3. Duties of Principal.** Principal shall:

(a)    Furnish Agent forms of title policies, title reports and commitments, and other forms required for the transaction of Principal's title insurance business;

(b)    Furnish Agent instructions relative to Principal's underwriting principles and practices and its procedures for issuing commitments, policies and endorsements;

(c)    Determine all risk questions submitted by Agent to Principal at the office designated in writing by Principal;

(d)    Arrange for reinsurance where necessary or desirable, to the extent such reinsurance is available; and

(e)    Pay any state premium tax assessed against the premiums collected in connection with any commitments, policies, or endorsements issued by Agent.

**4. Liability of Agent.** Agent shall be liable to and agrees to indemnify and save harmless Principal for all attorney's fees, court costs, expenses, liability, damage, and loss or aggregate of losses resulting from acts or omissions of Agent including, but not limited to, the following:

(a)    Omissions or other inaccuracies in any commitment, policy or endorsement which should not have been issued in light of information contained in the application or in the approved examiner's report, or which was actually known by the Agent;

(b)    Omissions or other inaccuracies in any commitment, policy or endorsement where the attorney formulating or participating in the opinion with respect to a report on or certificate of title upon which any such commitment, policy or endorsement is based is an officer, partner, or employee of Agent and fails to exercise due professional care and skill in connection with such opinion;

(c)    Errors and/or omissions in the abstracting or examination of title by Agent or its subcontractors, except for abstracting or examination of title provided to Agent by Principal, an Approved Attorney, or an Approved Abstracter, unless Agent has at the time of reliance actual knowledge of errors and/or omissions and fails to make full disclosure to Principal;

(d)    Failures of Agent to comply with the terms of this Agreement, or with the rules, regulations, bulletins, manuals, or instructions given by Principal or its subsidiaries;

(e)    Any improper closing or attempted closing by the Agent, including but not limited to (1) loss or misapplication of customer funds, documents, or other things of value entrusted to Agent in any custodial or fiduciary capacity, (2) failure to disburse properly or close in accordance with closing instructions, (3) misappropriation of escrow or closing funds;

(f)    The loss or wrongful use of any Commitment, Policy or Endorsement form furnished by Principal; or,

(g)    Those circumstances described in Paragraph 7 or Paragraph 8 of this Agreement resulting in a claim.

**5. Liability of Principal.** As between Principal and Agent, Principal shall be liable for all losses, damages, expenses and costs arising out of claims covered by and based upon any title insurance commitments, policies or endorsements issued under the terms of this Agreement, excepting only those losses, damages, expenses, and costs caused by actions or omissions for which the Agent is in this Agreement made responsible.

**6. Audit and examination of records.** Agent agrees that at any reasonable time or times during the term of this Agreement it will permit an audit and examination by Principal of all accounts, books, ledgers, tax returns and other financial and business records relating to the title insurance business conducted by Agent for Principal. The parties hereto agree that the manner of operation of any escrow business by Agent is a legitimate concern of Principal as a result of the issuance by Principal of "Closing Protection Letters" and because the quality of such services performed by Agent bears on the Agent's continuing ability to generate title insurance business on behalf of Principal. Agent therefore agrees that, although the Agent's escrow business is outside the scope of the agency relationship created by this Agreement, Principal shall be permitted at any reasonable time or times to audit and examine all financial and business records relating to any escrow business conducted by Agent. Such right of audit

*including a quality control review to be performed in the Agent's office by representatives of Principal's Maryland State Office prior to _____, 19___. Commencement of this Agreement is conditioned on review results satisfactory to Principal.

and examination of title insurance or escrow records, etc., may be exercised before or after termination of this Agreement. If the audit and examination by Principal reveals a shortage on the part of Agent, Agent shall immediately reimburse Principal for all such audit and examination expenses, as well as any shortage which may be owed to Principal.

The above paragraph is subject to the proviso that nothing therein contained shall require Agent to violate an attorney-client confidential relationship in order to comply with the requirements of said paragraph; however, it is understood and agreed that Agent is not an agent for Principal in connection with escrows, closings, or settlements and that Agent will make no representations to the contrary.

7.    **Termination.**

(a)    Notwithstanding the provisions of Article II hereof, this Agreement may be terminated immediately by written notice at the option of Principal if any one or more of the following events occur:

(1)    The filing of a petition in bankruptcy by or against Agent or a petition or pleading seeking or acquiescing in any reorganization or dissolution of Agent or the appointment of a receiver, trustee, or liquidator for Agent;

(2)    Agent ceases doing business, for whatever reason, as a title insurance agent;

(3)    Agent sells, leases, pledges, encumbers, or otherwise disposes of its title plant or any substantial part thereof (if Agent now or hereafter owns, leases or otherwise has an interest in a title plant), or in the event there is a change in the controlling interest in the ownership or management of Agent or the business thereof. If Agent is a corporation, a change in the controlling interest in the ownership of Agent shall be deemed to occur if and when the owner or owners of more than fifty percent (50%) of Agent's capital stock, or of the capital stock of any corporation owning more than fifty percent of Agent's capital stock, issued and outstanding at the date of this Agreement, cease to own more than that percentage of said capital stock. Agent shall furnish Principal a certified list of Agent's stockholders and of the stockholders of any corporation owning more than fifty percent of Agent's capital stock as of the date of this Agreement and shall advise Principal of all changes in such stockholders when and as they occur. A change in management may also be deemed to have occurred whenever such change occurs in either any corporation charged with management duties, or in any individual or individuals supervising or managing the day to day operations of Agent;

(4)    The occurrence of any claims arising out of Paragraphs 6 or 8 of this Agreement;

(5)    By reason of a material deviation by Agent from the underwriting instructions furnished to Agent by Principal;

(6)    If Agent, or a principal officer or partner of Agent, is indicted or convicted of a felony or if Agent, or a principal officer or partner of Agent, is an attorney-at-law and has his license suspended, is disbarred, or voluntarily surrenders his license to practice law;

(7)    By reason of unfavorable loss experience to Principal caused by commitments, policies and endorsements issued by Agent, or by reason of Agent's loss history through issuance of title insurance, or performance of related services, such as escrow and closing functions, without regard to cause.

(b)    This Agreement may be terminated upon written notice by either party hereto if and when the other party hereto (defaulting party) shall violate any of the terms, covenants and conditions of this Agreement on its part to be performed or observed and shall decline or fail for a period of twenty (20) days after receiving notice of any such default from the other party to cure such default and perform its obligations under this Agreement. If Principal has reason to believe Agent is in default of any provision of this Agreement, Principal shall have the option and right to suspend Agent's authority to issue Principal's title insurance commitments, policies and endorsements during such twenty-day period. In addition, if Agent shall be guilty of such default, Principal shall have the option and right, rather than giving notice of termination of this Agreement, of suspending Agent's authority to issue Principal's title insurance commitments, policies and endorsements until Agent shall have cured such default and performed its obligations under this Agreement. During any period of suspension, Agent shall be bound by all of the terms, covenants and conditions of this Agreement on its part to be performed or observed.

(c)    In the event the state or any governmental subdivision in which Agent's territory is situated, in whole or in part, shall impose obligations upon or make requirements of Principal in addition to or enlarging those existing at the date of this Agreement, whether by way of increasing taxes, license fees or otherwise, as a condition to Principal's continuing to do business in such state or governmental subdivision, Principal shall have the option and right to withdraw from the territory or part thereof so affected, and either to terminate this Agreement or to modify the same so as to eliminate from the scope thereof the state or governmental subdivision imposing such additional obligations and requirements, by giving written notice thereof to Agent; such termination or modification, as the case may be, to become effective sixty (60) days after the mailing by Principal to Agent of such notice.

(d)    In the event it becomes necessary for any party hereto to employ legal counsel or to bring any legal action or other proceeding to enforce any of the terms, covenants or conditions of this Agreement, the prevailing party or parties in any such action or proceeding shall be entitled to recover their costs and expenses, including attorney's fees, incurred in such action or proceeding from the nonprevailing party or parties.

(e)    Notwithstanding any provisions in this Agreement to the contrary, this Agreement shall not be terminated either automatically or by act of Agent, except at the option of Principal, so long as Agent shall be indebted to Principal or so long as Agent is in default under any of the terms, covenants and conditions of this Agreement.

(f)    Notwithstanding anything contained in this Agreement to the contrary, the termination of this Agreement for any cause shall not affect or impair any liability or obligation incurred by either party hereto prior to such termination.

(g)    In the event this Agreement is terminated for any reason whatsoever, Agent agrees nevertheless, upon the request of Principal, to process to completion any pending orders according to the provisions of this Agreement, which as to such pending orders will remain in effect as if not terminated.

**8. Escrow and closing activities of Agent.** Although any escrow or closing business conducted by Agent is not within the scope of this Agreement, Principal may, from time to time, in its sole discretion, as an accommodation to Agent in the promotion of Agent's title insurance agency business, issue a "Closing Protection Letter" (or any similar letter or agreement) to a prospective insured or other party to a real estate transaction being processed by Agent, the effect of which is to bind Principal to indemnify the addressee thereof against certain losses resulting from Agent's errors, omissions, or misconduct in acting as escrow, settlement, or closing agent for the parties to the transaction. In the event Principal makes payment or otherwise adjusts a claim arising out of the conduct of Agent's escrow business (whether or not based on such letter or agreement) either as a result of entry of judgment against Principal or as a result of compromise and settlement, Agent shall promptly reimburse Principal for the full amount of Principal's losses and expenditures, including attorneys fees, and costs of litigation or settlement negotiations.

**9. Agreement not assignable.** Neither this Agreement nor any right, interest, or duty arising under it is transferable, assignable, or delegable by either party hereto without the prior written consent of the other.

**10. Amendments.** No amendment of this Agreement or any modification thereto, whether in conflict with this Agreement or otherwise, shall be valid unless it be in writing and executed by both parties with the same formality as this Agreement is executed.

**11. Notices.** All notices provided for herein, except as otherwise expressly provided in this Agreement, shall be in writing, signed by the party giving the same and sent to the other party by certified United States mail, with return receipt requested. Principal's address for notification purposes is:

> 6630 West Broad Street
> Richmond, Virginia 23230
> or
> Post Office Box 27567
> Richmond, Virginia 23261-7567

Agent's address is that as shown on the first page of this Agreement, or as it may be changed from time to time upon notification to Principal.

**12. Principal's right to issue commitments, policies and endorsements.** Principal shall have the right to issue commitments, policies and endorsements from its National Headquarters, or through any of its subsidiaries, branch offices, or agents when the order therefor is not obtained by or through Agent, or the insured or its attorney has so requested. Principal shall also have the right to accept offers of reinsurance from and coinsurance with other title companies insuring land located in the territory described more fully in Paragraph 1 of this Agreement, and in such cases Agent shall not be entitled to any commission.

**13. Captions.** The captions of the paragraphs of this Agreement are inserted for reference and convenience purposes only, and they shall not be deemed parts of this Agreement, and in no way do they define, limit, or describe the scope of this Agreement or the intent of any provisions thereof.

**14. Non-Waiver.** No failure by Principal to insist on performance of any term of this Agreement or to exercise any right, power, or remedy caused by a breach thereof, and no acceptance by Principal of any payment or remittance from Agent during continuance of any such breach, shall constitute a waiver of such breach or of any such term. No waiver of any breach shall affect or alter this Agreement or the rights of Principal with respect to any other then existing or subsequent breach.

**15. Severability on Invalidity.** If any provision of this Agreement is declared invalid by any court, the remaining provisions of the Agreement shall not be affected thereby.

**16. Agent's office and territory.** Agent shall not issue commitments or policies from any additional offices other than the one(s) noted on the first page of this Agreement without the express written consent of Principal. Furthermore, Principal reserves the right to add or remove counties or cities from the Agent's territory at any time during the term of this Agreement, to be effective thirty (30) days after the mailing by Principal to Agent of such notice.

**17. Arbitration.** Unless prohibited by applicable law or regulation, either Principal or Agent may demand arbitration pursuant to the Arbitration Rules of the American Arbitration Association. Arbitrable matters may include any controversy or claim between Principal and Agent arising out of or relating to this Agreement. Arbitration pursuant to this Agreement shall be under the rules in effect on the date the demand for arbitration is made. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

**18. Completion of pending orders upon termination.** In the event this Agreement is terminated by either party, Principal and Agent agree that all files held by Agent which contain either a final application for policy, but no policy has yet been prepared, or which contain a commitment for title insurance but no final application for policy has been received by Agent, shall be transferred to Principal. Thereafter, as final policies are prepared by Principal and premiums are paid for such policies, Agent shall receive as its commission forty percent (40%) of all such premiums received by Principal.

**19. Abstracts of title.** Should Agent rely upon abstracts of title prepared by an abstractor approved by Principal (Approved Abstractor), Agent shall not be liable to Principal for any losses, damages, costs, or expenses arising by reason of errors or omissions in such abstracts of title, unless Agent has at the time of reliance actual knowledge of said errors or omissions and fails to make full disclosure of the same to Principal.

**20. Fidelity bond.** Agent agrees to maintain at Agent's Expense, at all times after July 1, 1992, a blanket fidelity bond or Letter of Credit pursuant to Article 48A/Section 168A of the Annotated Code of Maryland in the amount of $100,000.00 covering all of Agent's officers and employees, or such greater amount as may be required by the State Department of Insurance or other agency having jurisdiction. The identity of the carrier and the form of said bond shall be acceptable to Principal and Agent shall furnish to Principal a copy of the bond, a Certificate of Insurance issued by the carrier, and a statement from the carrier agreeing to give Principal not less than thirty (30) days written notice in the event of change of coverage or cancellation thereof.

**21. Entire agreement.** This Agreement constitutes an integration of the entire understanding and agreement of the parties. Any representation, warranty, promise, or condition, whether written or oral, not specifically incorporated herein, shall not be binding upon any of the parties hereto, and each party acknowledges that in entering into this Agreement it has not relied on any representation, promise, or condition not specifically set forth herein.

# MISCELLANEOUS

# Rate Schedule

Attached to and made a part of the Agency Agreement

between

Lawyers Title Insurance Corporation

and

BRENDA L. HOPKINS

DATED JANUARY 20, 1992.

## Maryland
### and the
### District of Columbia
### Title Insurance Rates

## AMENDMENT NO. 1

Attached to and made a part of that certain Agreement between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation and BRENDA L. HOPKINS, ESQUIRE, dated JANUARY 20, 1992.

THIS AMENDATORY AGREEMENT, made and entered into this 19TH day of FEBRUARY, 1997 by and between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, having its principal office in Richmond, Virginia (hereinafter called "Principal"), and BRENDA L. HOPKINS, ESQUIRE (hereinafter called "Agent").

### WITNESSETH:

THAT, for and in consideration of the benefits accruing to each, Principal and Agent by mutual agreement do hereby amend the Agency Agreement entered into on JANUARY 20, 1992, as follows, to wit:

Paragraph II. "TERM" of said agency agreement is hereby amended to substitute "Unless either party gives written notice to the other of its elections to terminate this Agreement at least one month prior to the end of any term, it shall be automatically extended for additional terms of six (6) months each beginning at the end of the initial term", in lieu of "...it shall be automatically extended for additional terms of one (1) year each beginning at the end of the initial term."

Page 6, Miscellaneous, Item I.    Notwithstanding anything contained in this Agreement to the contrary, Agent agrees to make a good faith effort to remit to Principal minimum sum of FIVE THOUSAND AND NO/100TH DOLLARS ($5,000.00) net premium ("minimum remittance") during this initial six month term thereafter unless agent receives notice from Principal as provided herein below.

If agent fails to remit the minimum remittances aforesaid during the initial term, or any subsequent term of this Agreement, Principal shall have the right to terminate this agreement by giving written notice of termination within Thirty (30) days after the expiration of the then current term of this agreement.    It is understood and agreed that termination of this Agreement is the sole penalty for Agent's failure to comply with the minimum remittance requirement, Principal shall not attempt to recover from Agent, the difference between the minimum remittance requirement and the actual amount remitted; however, the termination of this Agreement for failure to comply with the minimum remittance requirement shall not affect or impair any other liability or obligation incurred by Agent prior to such termination.

Principal hereby reserves the right to amend the minimum remittance which shall be due for any term of this Agreement by giving Agent written notice of said amended minimum remittance within Thirty (30) days after the commencement of the term during which the minimum remittance shall be due.

Except in the above respects, said Agency Agreement between Principal and Agent, dated JANUARY 20, 1992, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement and caused their seals to be affixed hereto.

ATTEST:                                LAWYERS TITLE INSURANCE CORPORATION

*Brenda A Cooke*                       BY: _____
*Assistant Secretary*                        Senior Vice President


ATTEST:                                BRENDA L. HOPKINS, ESQUIRE

_____        BY: *Brenda L. Hopkins*
                                            Brenda L. Hopkins, Esquire

## AMENDMENT NO. 2

Attached to and made a part of that certain Agreement between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation and BRENDA L. HOPKINS, ESQUIRE, dated JANUARY 20, 1992.

THIS AMENDATORY AGREEMENT, made and entered into this 22ND day of JULY, 1997 by and between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, having its principal office in Richmond, Virginia (hereinafter called "Principal"), and BRENDA L. HOPKINS, ESQUIRE (hereinafter called "Agent").

### WITNESSETH:

THAT, for and in consideration of the benefits accruing to each, Principal and Agent by mutual agreement do hereby amend the Agency Agreement entered into on JANUARY 20, 1992, as follows, to wit:

Paragraph II. "TERM" of said agency agreement is hereby amended to substitute "Unless either party gives written notice to the other of its elections to terminate this Agreement at least one month prior to the end of any term, it shall be automatically extended for additional terms of one (1) year each beginning at the end of the initial term", in lieu of "...it shall be automatically extended for additional terms of six (6) months each beginning at the end of the initial term."

Paragraph V. "Remittances and commission of said agency agreement is hereby amended to substitute "Agent shall retain as its commission    percent (30%) of each charge set forth in Paragraph III as the consideration for all services rendered by Agent for Principal under the terms of this Agreement..." in lieu of "Agent shall retain as its commission SIXTY percent (60%) of each charge set forth in Paragraph III as the consideration for all services rendered by Agent for Principal under the terms of this Agreement..."

Page 6, Miscellaneous, Item I.    Notwithstanding anything contained in this Agreement to the contrary, Agent agrees to make a good faith effort to remit to Principal minimum sum of FIVE THOUSAND AND NO/100TH DOLLARS ($5,000.00) net premium ("minimum remittance") during this initial six month term thereafter unless agent receives notice from Principal as provided herein below.

If agent fails to remit the minimum remittances aforesaid during the initial term, or any subsequent term of this Agreement, Principal shall have the right to terminate this agreement by giving written notice of termination within Thirty (30) days after the expiration of the then current term of this agreement.    It is understood and agreed that termination of this Agreement is the sole penalty for Agent's failure to comply with the minimum remittance requirement, Principal shall not attempt to recover from Agent, the difference between the minimum remittance requirement and the actual amount remitted; however, the termination of this Agreement for failure to comply with the minimum remittance requirement shall not affect or impair any other liability or obligation incurred by Agent prior to such termination.

Principal hereby reserves the right to amend the minimum remittance which shall be due for any term of this Agreement by giving Agent written notice of said amended minimum remittance within Thirty (30) days after the commencement of the term during which the minimum remittance shall be due.

Except in the above respects, said Agency Agreement between Principal and Agent, dated JANUARY 20, 1992, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement and caused their seals to be affixed hereto.

ATTEST:                              LAWYERS TITLE INSURANCE CORPORATION

_____            BY: _____
                                         Senior Vice President

ATTEST:                              BRENDA L. HOPKINS, ESQUIRE

_____            BY _____
                                        Brenda L. Hopkins, Esquire

-2-

# LAWYERS TITLE INSURANCE CORPORATION

## AMENDMENT NO. 3

ATTACHED TO and made a part of that certain Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and Brenda L. Hopkins, Esquire.

THIS AMENDATORY AGREEMENT, made and entered into this _24th_ day of December, 2000, by and between **LAWYERS TITLE INSURANCE CORPORATION**, A Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal"; and **Brenda L. Hopkins, Esquire**, having its place of business in Washington, DC, hereinafter call "Agent".

WITNESSETH, as follows:

WHEAREAS, Principal and Agent have heretofore entered into an agreement of agency under date of January, 20, 1992, and whereas it is desired to amend such agreement;

NOW THEREFORE, is agreed that for and in consideration of the benefits accruing to each, said agreement is hereby amended to read as follows:

A. Paragraph V. Remittances and commission. The commission rate that the Agent shall retain is hereby amended from Thirty Percent (30%) to Seventy Percent (70%).

THIS AMENDMENT, is applicable to all policy transmittals submitted by Agent to Principal with the policy effective date being on or after December 20, 2000, unless otherwise noted.

EXCEPT, as herein stated said agreement of agency between Principal and Agent is to remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed the date and year first above written.

ATTEST:

_____
Assistant Secretary

LAWYERS TITLE INSURANCE
CORPORATION

BY: _____
Carson Mills, Vice President


Brenda L. Hopkins, Esquire

By: _____
Brenda L. Hopkins, Esquire

# LAWYERS TITLE INSURANCE CORPORATION

## AMENDMENT NO. 4

**ATTACHED TO** and made a part of that certain Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **BRENDA L. HOPKINS, ESQUIRE.**

**THIS AMENDATORY AGREEMENT,** made and entered into this _6TH_ day of December, 2002, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **BRENDA L. HOPKINS, ESQUIRE**, having its place of business in Washington, D.C., hereinafter call "Agent".

**WITNESSETH,** as follows:

**WHEAREAS,** Principal and Agent have heretofore entered into an Agency Agreement under date of January 20, 1992, and whereas it is desired to amend such Agreement;

**NOW THEREFORE,** is agreed that for and in consideration of the benefits accruing to each, said Agreement is hereby amended to read as follows:

A.  The name of the Agent is hereby changed to **MERIT TITLE COMPANY, LLC.**
B.  **Paragraph I. Appointment and territory.** The State of Maryland is hereby added to the Agent's territory.

**EXCEPT,** as herein stated said Agency Agreement between Principal and Agent is to remain in full force and effect.

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be executed the date and year first above written.

**ATTEST:**

_____
Assistant Secretary

**LAWYERS TITLE INSURANCE CORPORATION**

By: _____
Carson Mills, Vice President

**BRENDA L. HOPKINS, ESQUIRE**

_____

**MERIT TITLE COMPANY, LLC**

By: _____
Brenda L. Hopkins, Managing Director

_____

## LAWYERS TITLE INSURANCE CORPORATION

## AMENDMENT NO. 5

**ATTACHED TO** and made a part of that certain Agreement dated January 20, 1992, between LAWYERS TITLE INSURANCE CORPORATION and MERIT TITLE COMPANY, LLC.

**THIS AMENDATORY AGREEMENT,** made and entered into this ___21ST___ day of July, 2003, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **MERIT TITLE COMPANY, LLC,** having its place of business in Washington, DC and College Park, Maryland, hereinafter call "Agent".

**WITNESSETH,** as follows:

**WHEAREAS,** Principal and Agent have heretofore entered into an Agency Agreement under date of January 20, 1992, and whereas it is desired to amend such Agreement;

**NOW THEREFORE,** is agreed that for and in consideration of the benefits accruing to each, said Agreement is hereby amended to read as follows:

A. **Paragraph IV. Policy issuing limit.** Agent's policy issuing limit is hereby increased from Two Hundred Thousand and 00/100 Dollars ($200,000.00) to Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00).

**THIS AMENDMENT** is applicable to all policy transmittals submitted by Agent to Principal for transactions which close on or after July 17, 2003.

**EXCEPT,** as herein stated said Agency Agreement between Principal and Agent is to remain in full force and effect.

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be executed the date and year first above written.

ATTEST:                                LAWYERS TITLE INSURANCE CORPORATION

_____          By: _____
Assistant Secretary                         Candace S. Chazen, Agency Manager

                                       MERIT TITLE COMPANY, LLC

                                       By: _____
_____              Brenda L. Hopkins, Managing Director



**LandAmerica**
**Lawyers Title**

Lawyers Title Insurance Corporation

## AMENDMENT NO. 6

ATTACHED TO and made a part of that certain Agency Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **MERIT TITLE COMPANY, LLC.**

THIS AMENDATORY AGREEMENT, made and entered into this 26ᵀᴴ day of ~~July~~ AUGUST, 2005, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **MERIT TITLE COMPANY, LLC**, having its place of business in Washington, DC, hereinafter call "Agent".

WITNESSETH, as follows:

WHEARAS, Principal and Agent have heretofore entered into an Agency Agreement under date of January 20, 1992, and whereas it is desired to amend such Agreement;

NOW THEREFORE, is agreed that for and in consideration of the benefits accruing to each, said Agreement is hereby amended to read as follows:

A. **Authorized Signors:** the PRINCIPAL hereby designates:

Brenda L. Hopkins (MD & DC)
Deidra E. Thomas (DC only)

And such other persons as may be recommended by the AGENT, licensed by the State of Maryland, as approved by the PRINCIPAL as persons authorized to countersign on behalf of the PRINCIPAL all reports of title, title insurance binders, commitments, title insurance policies and endorsements thereon covering real estate located in the above described territory. The PRINCIPAL may withdraw such authorization for just cause and make other authorizations agreeable to AGENT from time to time and its acts in this respect shall be effective when communicated to the AGENT.

EXCEPT, as herein stated said Agency Agreement between Principal and Agent is to remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed the date and year first above written.

ATTEST:                                    LAWYERS TITLE INSURANCE CORPORATION

_____           By: _____
Assistant Secretary                          Candace S. Chazen,
                                             Vice President - Agency Manager


                                        MERIT TITLE COMPANY, LLC

                                        By: _____
                                             Brenda L. Hopkins, Managing Director


**LandAmerica
Lawyers Title**

Lawyers Title Insurance Corporation

## AMENDMENT NO. 7

ATTACHED TO and made a part of that certain Agency Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **MERIT TITLE COMPANY, LLC**.

THIS AMENDATORY AGREEMENT, made and entered into this 30TH day of SEPTEMBER 2005, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **MERIT TITLE COMPANY, LLC**, having its place of business in Washington, DC, hereinafter called "Agent".

**WITNESSETH**, as follows:

**WHEREAS**, Principal and Agent have heretofore entered into an agreement of agency under date of January 20, 1992, and whereas it is desired to amend such agreement;

**NOW THEREFORE**, is agreed that for and in consideration of the benefits accruing to each, said agreement is hereby amended to read as follows:

A. **Paragraph IV. Policy Issuing limit.** Agent's policy issuing limit is hereby increased from Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) to Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00).

**THIS AMENDMENT** is applicable to all policy transmittals submitted by Agent to Principal for transactions which close on or after October 1, 2005.

**EXCEPT**, as herein stated said agreement of agency between Principal and Agent is to remain in full force and effect.

**IN WITNESS WHEREOF**, the parties hereto have caused this agreement to be executed the date and year first above written.

**ATTEST:**                          **LAWYERS TITLE INSURANCE CORPORATION**

_____              By: _____
Assistant Secretary                      Candace S. Chazen,
                                         Vice President – Agency Manager


                                   **MERIT TITLE COMPANY, LLC**

_____              By: _____
                                      Brenda L. Hopkins, Managing Director

## NON-DISCLOSURE ADDENDUM TO AGENCY AGREEMENT (DC)

This Non-Disclosure Addendum ("Addendum") is made to the Agency Agreement (defined below) and is entered into as of the Effective Date (defined below) by and among Agent (defined below) and Principal (defined below).

1.    **Identification and Definitions.**

The date of this Addendum is December 15, 2001 (the "Effective Date").

The Agent is BRENDA L. HOPKINS

Unit No. 11-00915

The Principal is LAWYERS TITLE INSURANCE CORPORATION.

The original Agency Agreement between Principal and Agent is dated January 20, 1992 (the "Agency Agreement").

2.    **Addendum.** The following text is hereby made a part of the Agency Agreement: "Agent agrees that it will not disclose any nonpublic personal information (as that term is defined in Section 3614 of the District of Columbia Department of Insurance Privacy of Consumer Financial Information Rules, referred to hereafter as the Regulation) received from Principal other than to carry out the purposes for which the information was disclosed, including use under an exception in Sections 3607 and 3608 of the Regulation."

3.    **Miscellaneous.** Except as expressly amended in this Addendum and any other addenda executed by Principal and Agent, all terms of the Agency Agreement shall remain in full force and effect.

By the authorized signatures below, the parties have executed this Addendum as of the Effective Date.

**PRINCIPAL:  LAWYERS TITLE INSURANCE CORPORATION**

By: _____
Name: Carson Mills
Title:   Vice President

**AGENT:  BRENDA L. HOPKINS**

By: _____
Name: Brenda L. Hopkins



**LandAmerica**
**Lawyers Title**

Lawyers Title Insurance Corporation

### MUTUAL TERMINATION AGREEMENT

THIS AGREEMENT, made this _____ day of February, 2007, by and between **LAWYERS TITLE INSURANCE CORPORATION**, (hereinafter "LTIC") and **MERIT TITLE COMPANY, LLC** (Unit No. 11-00915) (hereinafter "Agent"), witness as follows:

WHEREAS, on January 20, 1992, LTIC entered into an Agreement of Agency with Agent,

and

WHEREAS, it is mutually desired that said agreement be terminated.

NOW THEREFORE, it is agreed between the parties hereto as follow:

1.   Said Agreement of Agency shall be terminated effective February 28, 2007.

2.  Nothing herein contained shall affect any rights or obligations of either party hereto toward the other arising out of the said Agreement of Agency or operation thereunder, prior to termination.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed the day and year first above written.

ATTEST:                                                    **LAWYERS TITLE INSURANCE CORPORATION**

By: _____

                                                                Candace S. Chazen,
                                                                Vice President – Agency Manager


ATTEST:                                                    **MERIT TITLE COMPANY, LLC**

By: _____

                                                                Brenda L. Hopkins, President  Owner/Managing
                                                                                                                  Member

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

LAWYERS TITLE INSURANCE
CORPORATION
5600 Cox Road
Glen Allen, VA 23060

   Plaintiff,

 v.

MERIT TITLE COMPANY, LLC,

Serve:

Brenda L. Hopkins
Director
3724 12th Street, N.E.
Washington, D.C. 20017

BRENDA L. HOPKINS,

Serve:

Brenda L. Hopkins
3724 12th Street, N.E.
Washington, D.C. 20017

   Defendants.

## COMPLAINT

  Plaintiff Lawyers Title Insurance Corporation ("Lawyers Title"), by and through counsel,

for its complaint against Defendants Merit Title Company, LLC ("Merit Title") and Brenda

Hopkins hereby states as follows:

LAW OFFICES
BEAN, KINNEY & KORMAN
A PROFESSIONAL CORPORATION
2300 WILSON BOULEVARD, 7TH FLOOR
ARLINGTON, VIRGINIA 22201

EXHIBIT

A

ALL-STATE LEGAL®

## Introduction

1.   This lawsuit is for damages resulting from Merit Title's and Brenda Hopkin's breach of the Agency Agreement with Lawyers Title and breach of the standard of care for a title company and settlement attorney in conducting a real estate transaction.

## Parties

2.   Plaintiff Lawyers Title is a Virginia Corporation, with its principal place of business in Virginia.

3.   Defendant Merit Title has its principal place of business in Washington, DC and College Park, Maryland.  Merit Title is the title company that conducted the closing that involved and conveyed the forged and fraudulent deeds.

4.   Defendant Brenda Hopkins, upon information and belief, resides in Washington, D.C. Brenda Hopkins is the sole member of Merit Title and is the attorney who actually conducted these closings.

## Jurisdiction and Venue

5.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.   Venue is proper in this Court because the sale of real property at issue is located in the District of Columbia.

## Facts

7.   On January 20, 1992, Brenda Hopkins became a Lawyers Title agent. A copy of her Agency Agreement, with all amendments, is attached as **Exhibit 1**.

2

8.  By Amendment No. 4, on December 6, 2002, the name of the agent was changed to Merit Title Company, LLC.

9.  By Amendment No. 7, on September 30, 2005, Merit Title's policy issuing limit was increased from $350,000 to $750,000.

10. Under Section 4 of the Additional Terms and Conditions to the Agency Agreement, Merit Title agreed that:

> "Agent shall be liable and agrees to indemnify and save harmless Principal for all attorney's fees, court costs, expenses, liability, damage, and loss or aggregate of losses resulting from acts or omissions of Agent, including. . . ."

11. On February 21, 2005, Lion Real Estate Development & Management, LLC ("Lion"), owned by Steven Hetrick ("Hetrick") purportedly acquired title to 1819 10th Street, NW, Washington, D.C. ("Property") from Eugene and Josie Tucker (the "Tuckers"). Imposters appeared as the Tuckers and presented fake driver's licenses. To release the mortgages on the property, someone filed false Certificates of Satisfaction in the land records. Brenda Hopkins of Merit Title closed the transaction.

12. On May 13, 2005, Brenda Hopkins at Merit Title closed the sale of the Property from Lion to David W. Swain ("Swain"). The purchase price was $810,000. Swain financed the purchase with three mortgage loans: (1) first mortgage loan from SFC, LLC ("SFC") in the amount of $200,000; (2) second mortgage loan from Southern Management Corporation Retirement Trust ("SMC") in the amount of $500,000; and (3) third mortgage from Lion in the amount of $110,000.

3

13. Merit Title issued Lawyers Title policies to SFC and SMC. The deeds of trust was worthless because of a forged deed in Swain's chain of title.

14. The true owners of the Property were Eugene and Josie Tucker. Someone forged their signatures on a deed, dated February 21, 2005, purporting to convey the property to Lion. Merit Title closed the purported sale from the Tuckers to Lion. Someone arranged for imposters to attend the closing and to sign the deed for the Tuckers. Three months later, Merit Title closed the "sale" from Lion to Swain.

15. The Tuckers subsequently sued Swain and his lenders to clear the title. Tucker v. Swain, 05-0004890 (D.C. Superior Court).

16. Based on the strength of the Tuckers' summary judgment motion, Lawyers Title decided to discontinue the defense and to pay the Lender's loss. It negotiated a $200,000 settlement with SFC, which was represented by Bruce Magazine. It then attempted to settle with SMC for $275,000. This amount represented the appraised value of the property ($475,000), less the amount of the SFC first mortgage ($200,000).

17. While SMC initially refused Lawyers Title's settlement check, ultimately, SMC accepted the $275,000 payment, on the condition that acceptance of the payment would not preclude SMC from suing Lawyers Title for a larger payment.

18. On February 8, 2008, Plaintiff made a demand on Defendants to pay $475,000 to indemnify Lawyers Title as is required under the contract. Defendants failed to indemnify the Plaintiff.

4

## COUNT I: BREACH OF CONTRACT

19.    Plaintiff re-alleges paragraphs 1 through 22 herein.

20.    Defendants Merit Title and Brenda Hopkins were in breach of contract inter alia in that

they failed to identify the fraudulent real estate transaction and failed to prevent the

fraudulent real estate transaction.

21.    Defendants Merit Title and Brenda Hopkins have breached the Agency Agreement in that

the agreement requires Merit Title and/or Brenda Hopkins to indemnify Lawyers Title

for all attorney's fees, court fees, expenses, liability, damage, and losses resulting from acts

or omission by Merit Title and/or Brenda Hopkins.

22.    Defendants Merit Title and Brenda Hopkins have failed to indemnify Lawyers Title for

the losses that resulted from their acts.

23.    Defendants' breaches proximately caused Lawyers Title to suffer monetary damages in

the amount of $475,000, paid to SFC and SMC.

WHEREFORE, the Plaintiff moves this Court for judgment against Defendant Merit Title

and Brenda Hopkins, jointly and severally, in the amount of Four Hundred Seventy-Five

Thousand and 00/100 Dollars ($475,000), plus attorney's fees and costs Plaintiff has incurred to

date.

## COUNT II: NEGLIGENCE

24.    Plaintiff re-alleges paragraphs 1 through 22 herein.

25.    Defendants Merit Title and Brenda Hopkins owed a duty of reasonable care to Lawyers

Title to identify fraudulent real estate transactions and to avoid participating in or

furthering fraudulent schemes.

5

26. Defendants Merit Title and Brenda Hopkins acted negligently by failing to exercise reasonable care in the closing of the Property. As a result of their failure to exercise reasonable care, they failed to detect or prevent the fraudulent real estate transaction that gives rise to this lawsuit.

27. The Defendants' negligence proximately caused the Plaintiff to suffer monetary damages in the amount of $475,000, paid to SFC and SMC.

WHEREFORE, the Plaintiff moves this Court for judgment against Defendant Merit Title and Brenda Hopkins, jointly and severally, in the amount of Four Hundred Seventy-Five Thousand and 00/100 Dollars ($475,000), plus attorney's fees and costs Plaintiff has incurred to date.

Respectfully submitted,

Raighne C. Delaney, 454761
Bean, Kinney & Korman, P.C.
2000 N. 14th Street, Suite 100
Arlington, VA 22201
(703) 525-4000
Counsel for Plaintiff

6

01-0860 - 028

# Lawyers Title Insurance Corporation

## AGENCY AGREEMENT

LAWYERS TITLE INSURANCE CORPORATION ("Principal"), a Virginia Corporation and
**BRENDA L. HOPKINS, ESQUIRE**

("Agent"), whose office is located in ___WASHINGTON, D.C.___ and whose
mailing address is ___3724 12TH STREET, N.E.___
___WASHINGTON, D.C. 20017___
agree as follows:

**I. Appointment and territory.** Principal appoints Agent its agent solely for the purpose of issuing, on Principal's forms, title insurance commitments, policies and endorsements with reference to real estate located in the ___State of Maryland and the District of Columbia___

in accordance with this Agreement of one page and the attached ___6___ pages of Additional Terms and Conditions.

**II. Term.** This Agreement shall be for a term of six (6) months from ___JANUARY 20, 1992___. Unless either party gives written notice to the other of its election to terminate this Agreement at least one (1) month prior to the end of any term, it shall be automatically extended for additional terms of one (1) year each beginning at: the end of the initial term.

**III. Rates.** Agent shall quote, charge and collect title insurance premiums in accordance with the attached Rate Schedule. Principal may revise the Rate Schedule from time to time and deliver such revisions to Agent. Such revisions will become effective on the date designated by Principal.

**IV. Policy issuing limit.** Agent shall not, without written permission of Principal, commit Principal to a risk in excess of $ ___200,000.00___, which shall be Agent's policy issuing limit. This amount shall be deemed to include not only the commitment or policy immediately being issued, but also risks, regardless of amount, where Agent knows or has reason to believe that additional title insurance covering substantially the same land (including, without limitation, condominium and time share projects) will be applied for wherein the aggregate liability would exceed five time Agent's policy issuing limit, regardless of liability per policy.

**V. Remittances and commission.** Agent shall retain as its commission ___SIXTY___ percent ( ___60___ %) of each charge set forth in Paragraph III as the consideration for all services rendered by Agent for Principal under the terms of this Agreement; except Agent shall not be entitled to commission on the amounts, if any, charged for extra-hazardous risks insured by Principal ("extra hazardous risks" are those coverages and endorsements which are not routinely provided and for which additional premiums are charged.) Notwithstanding the foregoing commission arrangement, the minimum payment to Principal for each insurance policy issued (not including simultaneously issued policies) shall be $ ___50.00___. Until remitted, the Principal's portion of the charge shall be held in trust by Agent for the benefit of Principal.

Where title orders involving an amount of insurance of more than ___one million___ dollars ($1,000,000.00) are directed to Agent by Principal, its subsidiaries or agencies designated by Principal, the commission shall be individually negotiated by Principal and Agent.

If the title insurance premium is paid to Principal or one of its subsidiaries on any order, instead of to the Agent, then Agent will be sent the portion of the premium (commission) due it.

**VI. Coinsurance and reinsurance.** In any case where the proposed insured or the Principal deem coinsurance or reinsurance necessary or desirable, the commission to be paid to or retained by Agent shall be computed on the basis of the net amount remaining after subtracting the cost of such coinsurance or reinsurance from the premium for the title insurance issued by Agent.

**VII. Insurance coverage.** Agent shall retain in force at its expense title insurance agent's errors and omissions coverage in the amount of at least $ ___200,000.00___. The insurance carrier and the form of said policy shall be acceptable to Principal, and Agent shall furnish to Principal a copy of the policy, a certificate of insurance issued by the carrier, and a statement from the carrier agreeing to give Principal not less than thirty (30) days written notice in the event of change of coverage or cancellation thereof. At the option of Agent, such policy may contain a loss deductible clause up to $ ___2,500.00___.

WITNESS the hands and seals of Principal and Agent who have executed this Agreement this ___20TH___ day of ___JANUARY___, 19 ___92___.

ATTEST                                    Lawyers Title Insurance Corporation

_Brenda A. Cooke_                         BY: _____ (Seal)
Assistant Secretary                       FRANK T. MC CORMICK
                                          Senior Vice President

ATTEST

_____                   _Brenda L. Hopkins_
                                          BRENDA L. HOPKINS

Form 91-197 (MD), Rev. 6/4/91             Page 1


PLAINTIFF'S EXHIBIT

## Additional Terms and Conditions

**1. Limitations on Agent's authority.** Agent shall not, without written approval of Principal:

(a)   Commit Principal to a risk which Principal has determined to be an extra-hazardous risk or which Agent knows to be based upon a disputed title;

(b)   Adjust any claim for loss for which Principal may become liable;

(c)   Accept service of process on Principal, but Agent shall immediately notify Principal by regular mail, at the Principal's last known address, of any attempted service of summons or other process upon Agent. Agent shall also immediately notify Principal of any matter which is or may be a claim against Principal which may come to Agent's attention;

(d)   Incur bills, debts, or obligations chargeable to Principal;

(e)   Commit Principal to insure title to property in which the Agent (or a member of Agent's immediate family, a partner, a major stockholder or a member of the family of such an individual, or an entity controlled by the Agent) has an interest greater than ten percent (10%);

(f)   Vary or change in any manner the printed portions of any commitment, policy, endorsement or other forms furnished Agent by Principal, or commit Principal to any particular interpretation of the terms or provisions thereof;

(g)   Issue any commitment, policy or endorsement which insures against or over any matter by reason of an escrow deposit, indemnity agreement, letter of credit, or bond;

(h)   Issue a commitment, policy or endorsement unless based on reports or certificates of title made by either attorneys at law approved by Principal (hereinafter termed Approved Attorneys), or on reports or certificates of staff employees of Agent, or on reports of others approved in advance by Principal at Agent's request, on report forms approved by Principal, which reports and certificates shall be supplemented by abstracts of title whenever required by Principal; provided however, that whenever any such report or certificate of title is based on an abstract of title, Agent shall not issue a commitment or policy thereon unless and until the person, firm or corporation which prepared such abstract has also been approved by Principal (abstracters so approved being hereinafter termed Approved Abstracters);

(i)   Issue any commitment, policy, or endorsement which has not been countersigned on behalf of Agent, and such countersigning shall be done solely by Agent or by an employee of Agent. Agent shall furnish Principal with the names and signatures of those authorized to countersign on behalf of Agent, and shall promptly notify Principal in the same manner when any such individuals should leave or be added to the employment of Agent. Agent shall not authorize countersignature by anyone unlicensed or unregistered where licensing or registration is required by law or regulation; or

(j)   Issue a commitment, policy or endorsement in an amount in excess of the Agent's policy issuing limit as set forth in Paragraph IV.

(k)   Commit Principal to provide insurance against mechanics' or materialmen's liens.

**2. Duties of Agent.** Agent shall:

(a)   Receive and process applications for title insurance in a timely, prudent, and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules, regulations, bulletins, manuals and instructions of Principal and its subsidiaries;

(b)   Keep a separate file on each order for insurance placed with Agent, which file shall contain a copy of the commitment, policy or endorsement if issued and, unless copies are forwarded to Principal, a copy of the title report and all other documents such as certificates of survey, affidavits, waivers of lien, and the like, which were relied upon by the Agent to issue said commitment or policy. Title to all such files shall immediately vest in Principal. Upon termination of this Agreement, Agent shall deliver to Principal the contents of said files, which may not be copied by Agent without Principal's consent;

(c)   Furnish Principal in accordance with Principal's instructions title insurance liability reports, and send to Principal a copy of each policy and endorsement issued by said Agent; and remit and pay to Principal all premiums and other sums due Principal pursuant to this Agreement on a monthly basis and in no event later than the fifteenth day of the calendar month following issuance of the policy or endorsement upon which remittance is to be made (or other such reporting basis as designated by Principal) on the forms furnished by Principal. Any sum not remitted promptly when due shall bear interest from its due date until paid at the rate of ten percent (10%) per annum or the rate then in effect for U.S. Treasury Bills (six month term), whichever is greater. For purposes of this Agreement, a remittance shall be deemed to have been made when received by Principal at its National Headquarters in Richmond, Virginia or any other office designated by Principal;

(d)   Keep a policy register in a form approved by Principal showing the disposition of all policies and other prenumbered forms furnished by Principal. Upon request by Principal, Agent shall furnish a statement accounting for all such forms;

(e)   Keep safely in accounts insured by either FDIC or FSLIC separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transactions in which Principal's title insurance is involved, including escrow and settlement funds, and disburse said funds only for the purposes for which same were entrusted;

(1)   Maintain, in connection with escrow and settlement funds, individual accounting escrow ledger records listing receipts and disbursements in chronological order and showing the balance of escrow funds at each transaction date, and

(2)   Maintain a control account, i.e., a cumulative balance of escrow funds received and disbursed used to determine the total fiducial cash and fiducial liability;

(f)   Perform such services and render such assistance as Principal may reasonably request in connection with any claim or litigation on account of any commitment, policy or endorsement issued by Agent or by Principal on behalf of Agent, or on account of any business or act done by Agent, whether or not such claim is made or such litigation is instituted before or after the termination of this Agreement;

(g)   Comply with all applicable statutes, rules and regulations relating to the conduct of Agent's business;

(h)   Provide Principal, at its request, copies of audited financial statements of Agent, said statements to be kept confidential by Principal;

(j)   Not adopt or use for any purpose whatsoever, either during or after termination of this Agreement, either the corporate name, "Lawyers Title Insurance Corporation," any equivalent or abbreviated version thereof, or any name so similar that a person using care, caution, and observation that the public uses and may be expected to use would mistake one name for the other;

(j)   Cooperate with the Principal in the performance of quality control reviews of Agent's title insurance activities; *

(k)   Not dispose of a substantial portion of its assets, which would be necessary for the Agent to fulfill its duties as set forth in this Agreement, without first obtaining the consent of Principal or immediately replacing said assets; and

(l)   Actively solicit and diligently devote time and effort to the promotion and development of Principal's title insurance business for the mutual benefit of Principal and Agent. Nonetheless, except as expressly authorized by Principal in writing, it is understood and agreed that no advertising by Agent, whether by business signs, letterheads, newspaper or other means, shall represent or hold Agent out as the general agent or alter ego of Principal, but only that Agent is an authorized commitment and/or policy issuing agent of Principal. Nothing herein, however, shall prevent Agent from using the words "Titles Insured by Lawyers Title Insurance Corporation."

**3. Duties of Principal.   Principal shall:**

(a)   Furnish Agent forms of title policies, title reports and commitments, and other forms required for the transaction of Principal's title insurance business;

(b)   Furnish Agent instructions relative to Principal's underwriting principles and practices and its procedures for issuing commitments, policies and endorsements;

(c)   Determine all risk questions submitted by Agent to Principal at the office designated in writing by Principal;

(d)   Arrange for reinsurance where necessary or desirable, to the extent such reinsurance is available; and

(e)   Pay any state premium tax assessed against the premiums collected in connection with any commitments, policies, or endorsements issued by Agent.

**4. Liability of Agent.   Agent** shall be liable to and agrees to indemnify and save harmless Principal for all attorney's fees, court costs, expenses, liability, damage, and loss or aggregate of losses resulting from acts or omissions of Agent including, but not limited to, the following:

(a)   Omissions or other inaccuracies in any commitment, policy or endorsement which should not have been issued in light of information contained in the application or in the approved examiner's report, or which was actually known by the Agent;

(b)   Omissions or other inaccuracies in any commitment, policy or endorsement where the attorney formulating or participating in the opinion with respect to a report on or certificate of title upon which any such commitment, policy or endorsement is based is an officer, partner, or employee of Agent and fails to exercise due professional care and skill in connection with such opinion;

(c)   Errors and/or omissions in the abstracting or examination of title by Agent or its subcontractors, except for abstracting or examination of title provided to Agent by Principal, an Approved Attorney, or an Approved Abstracter, unless Agent has at the time of reliance actual knowledge of errors and/or omissions and fails to make full disclosure to Principal;

(d)   Failures of Agent to comply with the terms of this Agreement, or with the rules, regulations, bulletins, manuals, or instructions given by Principal or its subsidiaries;

(e)   Any improper closing or attempted closing by the Agent, including but not limited to (1) loss or misapplication of customer funds, documents, or other things of value entrusted to Agent in any custodial or fiduciary capacity, (2) failure to disburse properly or close in accordance with escrow or closing instructions, (3) misappropriation of escrow or closing funds;

(f)   The loss or wrongful use of any Commitment, Policy or Endorsement form furnished by Principal; or,

(g)   Those circumstances described in Paragraph 7 or Paragraph 8 of this Agreement resulting in a claim.

**5. Liability of Principal.   As** between Principal and Agent, Principal shall be liable for all losses, damages, expenses and costs arising out of claims covered by and based upon any title insurance commitments, policies or endorsements issued under the terms of this Agreement, excepting only those losses, damages, expenses, and costs caused by actions or omissions for which the Agent is in this Agreement made responsible.

**6. Audit and examination of records.   Agent** agrees that at any reasonable time or times during the term of this Agreement it will permit an audit and examination by Principal of all accounts, books, ledgers, tax returns and other financial and business records relating to the title insurance business conducted by Agent for Principal. The parties hereto agree that the manner of operation of any escrow business by Agent is a legitimate concern of Principal as a result of the issuance by Principal of "Closing Protection Letters" and because the quality of such services performed by Agent bears on the Agent's continuing ability to generate title insurance business on behalf of Principal. Agent therefore agrees that, although the Agent's escrow business is outside the scope of the agency relationship created by this Agreement, Principal shall be permitted at any reasonable time or times to audit and examine all financial and business records relating to any escrow business conducted by Agent. Such right of audit

*including a quality control review to be performed in the Agent's office by representatives of Principal's Maryland State Office prior to _____, 19____. Commencement of this Agreement is conditioned on review results satisfactory to Principal.

and examination of title insurance or escrow records, etc., may be exercised before or after termination of this Agreement. If the audit and examination by Principal reveals a shortage on the part of Agent, Agent shall immediately reimburse Principal for all such audit and examination expenses, as well as any shortage which may be owed to Principal.

The above paragraph is subject to the proviso that nothing therein contained shall require Agent to violate an attorney-client confidential relationship in order to comply with the requirements of said paragraph; however, it is understood and agreed that Agent is not an agent for Principal in connection with escrows, closings, or settlements and that Agent will make no representations to the contrary.

**7. Termination.**

(a)    Notwithstanding the provisions of Article II hereof, this Agreement may be terminated immediately by written notice at the option of Principal if any one or more of the following events occur:

(1)    The filing of a petition in bankruptcy by or against Agent or a petition or pleading seeking or acquiescing in any reorganization or dissolution of Agent or the appointment of a receiver, trustee, or liquidator for Agent;

(2)    Agent ceases doing business, for whatever reason, as a title insurance agent;

(3)    Agent sells, leases, pledges, encumbers, or otherwise disposes of its title plant or any substantial part thereof (if Agent now or hereafter owns, leases or otherwise has an interest in a title plant), or in the event there is a change in the controlling interest in the ownership or management of Agent or the business thereof. If Agent is a corporation, a change in the controlling interest in the ownership of Agent shall be deemed to occur if and when the owner or owners of more than fifty percent (50%) of Agent's capital stock, or of the capital stock of any corporation owning more than fifty percent of Agent's capital stock, issued and outstanding at the date of this Agreement, cease to own more than that percentage of said capital stock. Agent shall furnish Principal a certified list of Agent's stockholders and of the stockholders of any corporation owning more than fifty percent of Agent's capital stock as of the date of this Agreement and shall advise Principal of all changes in such stockholders when and as they occur. A change in management may also be deemed to have occurred whenever such change occurs in either any corporation charged with management duties, or in any individual or individuals supervising or managing the day to day operations of Agent;

(4)    The occurrence of any claims arising out of Paragraphs 6 or 8 of this Agreement;

(5)    By reason of a material deviation by Agent from the underwriting instructions furnished to Agent by Principal;

(6)    If Agent, or a principal officer or partner of Agent, is indicted or convicted of a felony or if Agent, or a principal officer or partner of Agent, is an attorney-at-law and has his license suspended, is disbarred, or voluntarily surrenders his license to practice law;

(7)    By reason of unfavorable loss experience to Principal caused by commitments, policies and endorsements issued by Agent, or by reason of Agent's loss history through issuance of title insurance, or performance of related services, such as escrow and closing functions, without regard to cause.

(b)    This Agreement may be terminated upon written notice by either party hereto if and when the other party hereto (defaulting party) shall violate any of the terms, covenants and conditions of this Agreement on its part to be performed or observed and shall decline or fail for a period of twenty (20) days after receiving notice of any such default from the other party to cure such default and perform its obligations under this Agreement. If Principal has reason to believe Agent is in default of any provision of this Agreement, Principal shall have the option and right to suspend Agent's authority to issue Principal's title insurance commitments, policies and endorsements during such twenty-day period. In addition, if Agent shall be guilty of such default, Principal shall have the option and right, rather than giving notice of termination of this Agreement, of suspending Agent's authority to issue Principal's title insurance commitments, policies and endorsements until Agent shall have cured such default and performed its obligations under this Agreement. During any period of suspension, Agent shall be bound by all of the terms, covenants and conditions of this Agreement on its part to be performed or observed.

(c)    In the event the state or any governmental subdivision in which Agent's territory is situated, in whole or in part, shall impose obligations upon or make requirements of Principal in addition to or enlarging those existing at the date of this Agreement, whether by way of increasing taxes, license fees or otherwise, as a condition to Principal's continuing to do business in such state or governmental subdivision, Principal shall have the option and right to withdraw from the territory or part thereof so affected, and either to terminate this Agreement or to modify the same so as to eliminate from the scope thereof the state or governmental subdivision imposing such additional obligations and requirements, by giving written notice thereof to Agent; such termination or modification, as the case may be, to become effective sixty (60) days after the mailing by Principal to Agent of such notice.

(d)    In the event it becomes necessary for any party hereto to employ legal counsel or to bring any legal action or other proceeding to enforce any of the terms, covenants or conditions of this Agreement, the prevailing party or parties in any such action or proceeding shall be entitled to recover their costs and expenses, including attorney's fees, incurred in such action or proceeding from the nonprevailing party or parties.

(e)    Notwithstanding any provisions in this Agreement to the contrary, this Agreement shall not be terminated either automatically or by act of Agent, except at the option of Principal, so long as Agent shall be indebted to Principal or so long as Agent is in default under any of the terms, covenants and conditions of this Agreement.

(f)    Notwithstanding anything contained in this Agreement to the contrary, the termination of this Agreement for any cause shall not affect or impair any liability or obligation incurred by either party prior to such termination.

(g)    In the event this Agreement is terminated for any reason whatsoever, Agent agrees nevertheless, upon the request of Principal, to process to completion any pending orders according to the provisions of this Agreement, which as to such pending orders will remain in effect as if not terminated.

**8. Escrow and closing activities of Agent.** Although any escrow or closing business conducted by Agent is not within the scope of this Agreement, Principal may, from time to time, in its sole discretion, as an accommodation to Agent in the promotion of Agent's title insurance agency business, issue a "Closing Protection Letter" (or any similar letter or agreement) to a prospective insured or other party to a real estate transaction being processed by Agent, the effect of which is to bind Principal to indemnify the addressee thereof against certain losses resulting from Agent's errors, omissions, or misconduct in acting as escrow, settlement, or closing agent for the parties to the transaction. In the event Principal makes payment or otherwise adjusts a claim arising out of the conduct of Agent's escrow business (whether or not based on such letter or agreement) either as a result of entry of judgment against Principal or as a result of compromise and settlement, Agent shall promptly reimburse Principal for the full amount of Principal's losses and expenditures, including attorneys fees, and costs of litigation or settlement negotiations.

**9. Agreement not assignable.** Neither this Agreement nor any right, interest, or duty arising under it is transferable, assignable, or delegable by either party hereto without the prior written consent of the other.

**10. Amendments.** No amendment of this Agreement or any modification thereto, whether in conflict with this Agreement or otherwise, shall be valid unless it be in writing and executed by both parties with the same formality as this Agreement is executed.

**11. Notices.** All notices provided for herein, except as otherwise expressly provided in this Agreement, shall be in writing, signed by the party giving the same and sent to the other party by certified United States mail, with return receipt requested. Principal's address for notification purposes is:

> 6630 West Broad Street
> Richmond, Virginia 23230
> or
> Post Office Box 27567
> Richmond, Virginia 23261-7567

Agent's address is that as shown on the first page of this Agreement, or as it may be changed from time to time upon notification to Principal.

**12. Principal's right to issue commitments, policies and endorsements.** Principal shall have the right to issue commitments, policies and endorsements from its National Headquarters, or through any of its subsidiaries, branch offices, or agents when the order therefor is not obtained by or through Agent, or the insured or its attorney has so requested. Principal shall also have the right to accept offers of reinsurance from and coinsurance with other title companies insuring land located in the territory described more fully in Paragraph I of this Agreement, and in such cases Agent shall not be entitled to any commission.

**13. Captions.** The captions of the paragraphs of this Agreement are inserted for reference and convenience purposes only, and they shall not be deemed parts of this Agreement, and in no way do they define, limit, or describe the scope of this Agreement or the intent of any provisions thereof.

**14. Non-Waiver.** No failure by Principal to insist on performance of any term of this Agreement or to exercise any right, power, or remedy caused by a breach thereof, and no acceptance by Principal of any payment or remittance from Agent during continuance of any such breach, shall constitute a waiver of such breach or of any such term. No waiver of any breach shall affect or alter this Agreement or the rights of Principal with respect to any other then existing or subsequent breach.

**15. Severability on Invalidity.** If any provision of this Agreement is declared invalid by any court, the remaining provisions of the Agreement shall not be affected thereby.

**16. Agent's office and territory.** Agent shall not issue commitments or policies from any additional offices other than the one(s) noted on the first page of this Agreement without the express written consent of Principal. Furthermore, Principal reserves the right to add or remove counties or cities from the Agent's territory at any time during the term of this Agreement, to be effective thirty (30) days after the mailing by Principal to Agent of such notice.

**17. Arbitration.** Unless prohibited by applicable law or regulation, either Principal or Agent may demand arbitration pursuant to the Arbitration Rules of the American Arbitration Association. Arbitrable matters may include any controversy or claim between Principal and Agent arising out of or relating to this Agreement. Arbitration pursuant to this Agreement shall be under the rules in effect on the date the demand for arbitration is made. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

**18. Completion of pending orders upon termination.** In the event this Agreement is terminated by either party, Principal and Agent agree that all files held by Agent which contain either a final application for policy, but no policy has yet been prepared, or which contain a commitment for title insurance but no final application for policy has been received by Agent, shall be transferred to Principal. Thereafter, as final policies are prepared by Principal and premiums are paid for such policies, Agent shall receive as its commission forty percent (40%) of all such premiums received by Principal.

**19. Abstracts of title.** Should Agent rely upon abstracts of title prepared by an abstractor approved by Principal (Approved Abstractor), Agent shall not be liable to Principal for any losses, damages, costs, or expenses arising by reason of errors or omissions in such abstracts of title, unless Agent has at the time of reliance actual knowledge of said errors or omissions and fails to make full disclosure of the same to Principal.

**20. Fidelity bond.** Agent agrees to maintain at Agent's Expense, at all times after July 1, 1992, a blanket fidelity bond or Letter of Credit pursuant to Article 48A/Section 168A of the Annotated Code of Maryland in the amount of $100,000.00 covering all of Agent's officers and employees, or such greater amount as may be required by the State Department of Insurance or other/agency having jurisdiction. The identity of the carrier and the form of said bond shall be acceptable to Principal and Agent shall furnish to Principal a copy of the bond, a Certificate of Insurance issued by the carrier, and a statement from the carrier agreeing to give Principal not less than thirty (30) days written notice in the event of change of coverage or cancellation thereof.

**21. Entire agreement.** This Agreement constitutes an integration of the entire understanding and agreement of the parties. Any representation, warranty, promise, or condition, whether written or oral, not specifically incorporated herein, shall not be binding upon any of the parties hereto, and each party acknowledges that in entering into this Agreement it has not relied on any representation, promise, or condition not specifically set forth herein.

## MISCELLANEOUS

# Rate Schedule

Attached to and made a part of the Agency Agreement

between

Lawyers Title Insurance Corporation

and

BRENDA L. HOPKINS

DATED JANUARY 20, 1992.



**Maryland**
and the
**District of Columbia**
**Title Insurance Rates**

# AMENDMENT NO. 1

Attached to and made a part of that certain Agreement between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation and BRENDA L. HOPKINS, ESQUIRE, dated JANUARY 20, 1992.

THIS AMENDATORY AGREEMENT, made and entered into this 19TH day of FEBRUARY, 1997 by and between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, having its principal office in Richmond, Virginia (hereinafter called "Principal"), and BRENDA L. HOPKINS, ESQUIRE (hereinafter called "Agent").

## WITNESSETH:

THAT, for and in consideration of the benefits accruing to each, Principal and Agent by mutual agreement do hereby amend the Agency Agreement entered into on JANUARY 20, 1992, as follows, to wit:

Paragraph II. "TERM" of said agency agreement is hereby amended to substitute "Unless either party gives written notice to the other of its elections to terminate this Agreement at least one month prior to the end of any term, it shall be automatically extended for additional terms of six (6) months each beginning at the end of the initial term", in lieu of "...it shall be automatically extended for additional terms of one (1) year each beginning at the end of the initial term."

Page 6, Miscellaneous, Item I.  Notwithstanding anything contained in this Agreement to the contrary, Agent agrees to make a good faith effort to remit to Principal minimum sum of FIVE THOUSAND AND NO/100TH DOLLARS ($5,000.00) net premium ("minimum remittance") during this initial six month term thereafter unless agent receives notice from Principal as provided herein below.

If agent fails to remit the minimum remittances aforesaid during the initial term, or any subsequent term of this Agreement, Principal shall have the right to terminate this agreement by giving written notice of termination within Thirty (30) days after the expiration of the then current term of this agreement.  It is understood and agreed that termination of this Agreement is the sole penalty for Agent's failure to comply with the minimum remittance requirement, Principal shall not attempt to recover from Agent, the difference between the minimum remittance requirement and the actual amount remitted; however, the termination of this Agreement for failure to comply with the minimum remittance requirement shall not affect or impair any other liability or obligation incurred by Agent prior to such termination.

Principal hereby reserves the right to amend the minimum remittance which shall be due for any term of this Agreement by giving Agent written notice of said amended minimum remittance within Thirty (30)days after the commencement of the term during which the minimum remittance shall be due.

Except in the above respects, said Agency Agreement between Principal and Agent, dated JANUARY 20, 1992, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement and caused their seals to be affixed hereto.

ATTEST:

LAWYERS TITLE INSURANCE CORPORATION

BY: _____

Senior Vice President

ATTEST:

BRENDA L. HOPKINS, ESQUIRE

BY: _____

Brenda L. Hopkins, Esquire

AMENDMENT NO. 2

Attached to and made a part of that certain Agreement between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation and BRENDA L. HOPKINS, ESQUIRE, dated JANUARY 20, 1992.

THIS AMENDATORY AGREEMENT, made and entered into this 22ND day of JULY, 1997 by and between LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, having its principal office in Richmond, Virginia (hereinafter called "Principal"), and BRENDA L. HOPKINS, ESQUIRE (hereinafter called "Agent").

WITNESSETH:

THAT, for and in consideration of the benefits accruing to each, Principal and Agent by mutual agreement do hereby amend the Agency Agreement entered into on JANUARY 20, 1992, as follows, to wit:

Paragraph II. "TERM" of said agency agreement is hereby amended to substitute "Unless either party gives written notice to the other of its elections to terminate this Agreement at least one month prior to the end of any term, it shall be automatically extended for additional terms of one (1) year each beginning at the end of the initial term", in lieu of "...it shall be automatically extended for additional terms of six (6) months each beginning at the end of the initial term."

Paragraph V. "Remittances and commission of said agency agreement is hereby amended to substitute "Agent shall retain as its commission    percent (30%) of each charge set forth in Paragraph III as the consideration for all services rendered by Agent for Principal under the terms of this Agreement..." in lieu of "Agent shall retain as its commission SIXTY percent (60%) of each charge set forth in Paragraph III as the consideration for all services rendered by Agent for Principal under the terms of this Agreement...."

Page 6, Miscellaneous, Item I.    Notwithstanding anything contained in this Agreement to the contrary, Agent agrees to make a good faith effort to remit to Principal minimum sum of FIVE THOUSAND AND NO/100TH DOLLARS ($5,000.00) net premium ("minimum remittance") during this initial six month term thereafter unless agent receives notice from Principal as provided herein below.

If agent fails to remit the minimum remittances aforesaid during the initial term, or any subsequent term of this Agreement, Principal shall have the right to terminate this agreement by giving written notice of termination within Thirty (30) days after the expiration of the then current term of this agreement.    It is understood and agreed that termination of this Agreement is the sole penalty for Agent's failure to comply with the minimum remittance requirement, Principal shall not attempt to recover from Agent, the difference between the minimum remittance requirement and the actual amount remitted; however, the termination of this Agreement for failure to comply with the minimum remittance requirement shall not affect or impair any other liability or obligation incurred by Agent prior to such termination.

Principal hereby reserves the right to amend the minimum remittance which shall be due for any term of this Agreement by giving Agent written notice of said amended minimum remittance within Thirty (30) days after the commencement of the term during which the minimum remittance shall be due.

Except in the above respects, said Agency Agreement between Principal and Agent, dated JANUARY 20, 1992, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement and caused their seals to be affixed hereto.

ATTEST:                         LAWYERS TITLE INSURANCE CORPORATION

_____           BY: _____
                                       Senior Vice President

ATTEST:                         BRENDA L. HOPKINS, ESQUIRE

_____           BY _____
                                       Brenda L. Hopkins, Esquire

-2-

## LAWYERS TITLE INSURANCE CORPORATION

## AMENDMENT NO. 3

ATTACHED TO and made a part of that certain Agreement dated January 20, 1992, between LAWYERS TITLE INSURANCE CORPORATION and Brenda L. Hopkins, Esquire.

THIS AMENDATORY AGREEMENT, made and entered into this _29th_ day of December, 2000, by and between LAWYERS TITLE INSURANCE CORPORATION, A Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal"; and Brenda L. Hopkins, Esquire, having its place of business in Washington, DC, hereinafter call "Agent".

WITNESSETH, as follows:

WHEAREAS, Principal and Agent have heretofore entered into an agreement of agency under date of January, 20, 1992, and whereas it is desired to amend such agreement;

NOW THEREFORE, is agreed that for and in consideration of the benefits accruing to each, said agreement is hereby amended to read as follows:

A. Paragraph V. Remittances and commission. The commission rate that the Agent shall retain is hereby amended from Thirty Percent (30%) to Seventy Percent (70%).

THIS AMENDMENT, is applicable to all policy transmittals submitted by Agent to Principal with the policy effective date being on or after December 20, 2000, unless otherwise noted.

EXCEPT, as herein stated said agreement of agency between Principal and Agent is to remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed the date and year first above written.

ATTEST:                                         LAWYERS TITLE INSURANCE
                                                CORPORATION

_____                         BY: _____
Assistant Secretary                                  Carson Mills, Vice President


                                                Brenda L. Hopkins, Esquire

                                                By: _____
                                                     Brenda L. Hopkins, Esquire

# LAWYERS TITLE INSURANCE CORPORATION

## AMENDMENT NO. 4

**ATTACHED TO** and made a part of that certain Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **BRENDA L. HOPKINS, ESQUIRE.**

**THIS AMENDATORY AGREEMENT,** made and entered into this **6TH** day of December, 2002, by and between **LAWYERS TITLE INSURANCE CORPORATION,** a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **BRENDA L. HOPKINS, ESQUIRE,** having its place of business in Washington, D.C., hereinafter call "Agent".

**WITNESSETH,** as follows:

**WHEAREAS,** Principal and Agent have heretofore entered into an Agency Agreement under date of January 20, 1992, and whereas it is desired to amend such Agreement;

**NOW THEREFORE,** is agreed that for and in consideration of the benefits accruing to each, said Agreement is hereby amended to read as follows:

A. The name of the Agent is hereby changed to **MERIT TITLE COMPANY, LLC.**
B. **Paragraph I. Appointment and territory.** The State of Maryland is hereby added to the Agent's territory.

**EXCEPT,** as herein stated said Agency Agreement between Principal and Agent is to remain in full force and effect.

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be executed the date and year first above written.

ATTEST:                                          LAWYERS TITLE INSURANCE CORPORATION

_____          By:_____
Assistant Secretary                                   Carson Mills, Vice President


BRENDA L. HOPKINS, ESQUIRE

_____


MERIT TITLE COMPANY, LLC

_____          By:_____
                                                       Brenda L. Hopkins, Managing Director

## LAWYERS TITLE INSURANCE CORPORATION

## AMENDMENT NO. 5

**ATTACHED TO** and made a part of that certain Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **MERIT TITLE COMPANY, LLC.**

**THIS AMENDATORY AGREEMENT**, made and entered into this 21ST day of July, 2003, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **MERIT TITLE COMPANY, LLC**, having its place of business in Washington, DC and College Park, Maryland, hereinafter call "Agent".

**WITNESSETH**, as follows:

**WHEAREAS**, Principal and Agent have heretofore entered into an Agency Agreement under date of January 20, 1992, and whereas it is desired to amend such Agreement;

**NOW THEREFORE**, is agreed that for and in consideration of the benefits accruing to each, said Agreement is hereby amended to read as follows:

A. **Paragraph IV. Policy Issuing limit.** Agent's policy issuing limit is hereby increased from Two Hundred Thousand and 00/100 Dollars ($200,000.00) to Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00).

**THIS AMENDMENT** is applicable to all policy transmittals submitted by Agent to Principal for transactions which close on or after July 17, 2003.

**EXCEPT**, as herein stated said Agency Agreement between Principal and Agent is to remain in full force and effect.

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be executed the date and year first above written.

ATTEST:                              **LAWYERS TITLE INSURANCE CORPORATION**

_____              By: _____
Assistant Secretary                      Candace S. Chazen, Agency Manager


                                     **MERIT TITLE COMPANY, LLC**

_____              By: _____
                                         Brenda L. Hopkins, Managing Director



**LandAmerica
Lawyers Title**

Lawyers Title Insurance Corporation

## AMENDMENT NO. 6

    **ATTACHED TO** and made a part of that certain Agency Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **MERIT TITLE COMPANY, LLC.**

    **THIS AMENDATORY AGREEMENT**, made and entered into this _26TH_ day of ~~July~~, 2005, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **MERIT TITLE COMPANY, LLC**, having its place of business in Washington, DC, hereinafter call "Agent".

    **WITNESSETH**, as follows:

    **WHEAREAS**, Principal and Agent have heretofore entered into an Agency Agreement under date of January 20, 1992, and whereas it is desired to amend such Agreement;

    **NOW THEREFORE**, is agreed that for and in consideration of the benefits accruing to each, said Agreement is hereby amended to read as follows:

    A. **Authorized Signors:** the PRINCIPAL hereby designates:

        Brenda L. Hopkins (MD & DC)
        Deidra E. Thomas (DC only)

        And such other persons as may be recommended by the AGENT, licensed by the State of Maryland, as approved by the PRINCIPAL as persons authorized to countersign on behalf of the PRINCIPAL all reports of title, title insurance binders, commitments, title insurance policies and endorsements thereon covering real estate located in the above described territory.  The PRINCIPAL may withdraw such authorization for just cause and make other authorizations agreeable to AGENT from time to time and its acts in this respect shall be effective when communicated to the AGENT.

    **EXCEPT**, as herein stated said Agency Agreement between Principal and Agent is to remain in full force and effect.

    **IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be executed the date and year first above written.

ATTEST:

_Deidra D. Thomas_
Assistant Secretary

LAWYERS TITLE INSURANCE CORPORATION

By: _Candace Chazen_
    Candace S. Chazen,
    Vice President - Agency Manager

MERIT TITLE COMPANY, LLC

By: _Brenda L. Hopkins_
    Brenda L. Hopkins, Managing Director

Form 4100-100


**LandAmerica
Lawyers Title**

Lawyers Title Insurance Corporation

## AMENDMENT NO. 7

ATTACHED TO and made a part of that certain Agency Agreement dated January 20, 1992, between **LAWYERS TITLE INSURANCE CORPORATION** and **MERIT TITLE COMPANY, LLC.**

THIS AMENDATORY AGREEMENT, made and entered into this 30TH day of SEPTEMBER 2005, by and between **LAWYERS TITLE INSURANCE CORPORATION**, a Virginia corporation, having its principal place of business in Richmond, Virginia, hereinafter called "Principal", and **MERIT TITLE COMPANY, LLC**, having its place of business in Washington, DC, hereinafter called "Agent".

WITNESSETH, as follows:

WHEREAS, Principal and Agent have heretofore entered into an agreement of agency under date of January 20, 1992, and whereas it is desired to amend such agreement;

NOW THEREFORE, is agreed that for and in consideration of the benefits accruing to each, said agreement is hereby amended to read as follows:

A. **Paragraph IV. Policy Issuing limit.** Agent's policy issuing limit is hereby increased from Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) to Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00).

THIS AMENDMENT is applicable to all policy transmittals submitted by Agent to Principal for transactions which close on or after October 1, 2005.

EXCEPT, as herein stated said agreement of agency between Principal and Agent is to remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed the date and year first above written.

ATTEST:                                        **LAWYERS TITLE INSURANCE CORPORATION**

_____     By: _____
Assistant Secretary                              Candace S. Chazen,
                                                          Vice President – Agency Manager


                                                **MERIT TITLE COMPANY, LLC**

_____     By: _____
                                                     Brenda L. Hopkins, Managing Director

Form 4100-100

## NON-DISCLOSURE ADDENDUM TO AGENCY AGREEMENT (DC)

This Non-Disclosure Addendum ("Addendum") is made to the Agency Agreement (defined below) and is entered into as of the Effective Date (defined below) by and among Agent (defined below) and Principal (defined below).

1.    **Identification and Definitions.**

The date of this Addendum is December 15, 2001 (the "Effective Date").

The Agent is BRENDA L. HOPKINS

Unit No. 11-00915

The Principal is LAWYERS TITLE INSURANCE CORPORATION.

The original Agency Agreement between Principal and Agent is dated January 20, 1992 (the "Agency Agreement").

2.    **Addendum.** The following text is hereby made a part of the Agency Agreement: "Agent agrees that it will not disclose any nonpublic personal information (as that term is defined in Section 3614 of the District of Columbia Department of Insurance Privacy of Consumer Financial Information Rules, referred to hereafter as the Regulation) received from Principal other than to carry out the purposes for which the information was disclosed, including use under an exception in Sections 3607 and 3608 of the Regulation."

3.    **Miscellaneous.** Except as expressly amended in this Addendum and any other addenda executed by Principal and Agent, all terms of the Agency Agreement shall remain in full force and effect.

By the authorized signatures below, the parties have executed this Addendum as of the Effective Date.

**PRINCIPAL: LAWYERS TITLE INSURANCE CORPORATION**

By: _____
Name: Carson Mills
Title:   Vice President

**AGENT: BRENDA L. HOPKINS**

By: _____
Name: Brenda L. Hopkins



Lawyers Title Insurance Corporation

## MUTUAL TERMINATION AGREEMENT

THIS AGREEMENT, made this _____ day of February, 2007, by and between **LAWYERS TITLE INSURANCE CORPORATION,** (hereinafter "LTIC") and **MERIT TITLE COMPANY, LLC** (Unit No. 11-00915) (hereinafter "Agent"), witness as follows:

WHEREAS, on January 20, 1992, LTIC entered into an Agreement of Agency with Agent,

and

WHEREAS, it is mutually desired that said agreement be terminated.

NOW THEREFORE, it is agreed between the parties hereto as follow:

1.  Said Agreement of Agency shall be terminated effective February 28, 2007.

2.  Nothing herein contained shall affect any rights or obligations of either party hereto toward the other arising out of the said Agreement of Agency or operation thereunder, prior to termination.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed the day and year first above written.

ATTEST:                                              LAWYERS TITLE INSURANCE CORPORATION

_____            By: _____
                                                         Candace S. Chazen,
                                                         Vice President - Agency Manager


ATTEST:                                              MERIT TITLE COMPANY, LLC

_____            By: _____
                                                         Brenda L. Hopkins, President  Owner/Managing
                                                                                                              member