UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

LAWYERS TITLE INSURANCE
CORPORATION

        Plaintiff,

  v.                             Civil Action No. 1:08-CV-00275

MERIT TITLE COMPANY, LLC, et al

        Defendants.

**LAWYERS TITLE'S OPPOSITION TO THE MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, TO STAY**

COMES NOW, plaintiff Lawyers Title Insurance Corporation ("Lawyers Title"), by counsel, to oppose the Motion to Dismiss, or in the alternative to stay, filed by defendants Merit Title Company, LLC ("Merit Title") and Brenda Hopkins ("Hopkins"), and states:

I.    **<u>SUMMARY</u>**

The defendants move to dismiss or stay this case pursuant to the *Colorado River* abstention doctrine. Under the doctrine, the Court may dismiss this case if there is parallel or concurrent state court litigation. This Court should deny the motion because 1) Lawyers Title is not a party to the Superior Court litigation, thus there is no parallel or concurrent proceeding, 2) the combination of factors weighs against abstention, inasmuch as the Superior Court, as a forum, cannot adequately protect Lawyers Title rights. If the court dismisses this case and directs Lawyers Title to re-file the case in the Superior Court, the applicable statute of limitations to Lawyers Title's claims against Merit Title and Hopkins has expired, and 3) this court must heavily weigh the various factors in favor of exercising jurisdiction.

LAW OFFICES
BEAN, KINNEY & KORMAN
A PROFESSIONAL CORPORATION
2300 WILSON BOULEVARD, 7TH FLOOR
ARLINGTON, VIRGINIA 22201

II.    **STATEMENT OF FACTS**

1.    On January 20, 1992, Brenda Hopkins became a Lawyers Title agent.  By Amendment

No. 4 to the Agency Agreement, on December 6, 2002, the name of the agent was

changed to Merit Title Company, LLC.  Complaint, par. 7 - 9.

2.    Under Section 4 of the Additional Terms and Conditions to the Agency Agreement,

Merit Title agreed that:

> "Agent shall be liable and agrees to indemnify and save harmless
> Principal for all attorney's fees, court costs, expenses, liability,
> damage, and loss or aggregate of losses resulting from acts or
> omissions of Agent, including. . . ."

Complaint, par. 10.

3.    On February 21, 2005, Lion Real Estate Development & Management, LLC ("Lion"),

owned by Steven Hetrick ("Hetrick") purportedly acquired title to 1819 10th Street, NW,

Washington, D.C. ("Property") from Eugene and Josie Tucker (the "Tuckers").

Imposters appeared as the Tuckers and presented fake driver's licenses.  To release the

mortgages on the property, someone filed false Certificates of Satisfaction in the land

records.  Complaint, par. 11.

4.    On May 13, 2005, Brenda Hopkins at Merit Title closed the sale of the Property from

Lion to David W. Swain ("Swain").  The purchase price was $810,000.  Swain financed

the purchase with three mortgage loans: (1) first mortgage loan from SFC, LLC ("SFC")

in the amount of $200,000; (2) second mortgage loan from Southern Management

Corporation Retirement Trust ("SMC") in the amount of $500,000; and (3) third

mortgage from Lion in the amount of $110,000.  Complaint, par. 12.

2

5.  Merit Title issued Lawyers Title policies to SFC and SMC. The deeds of trust was worthless because of a forged deed in Swain's chain of title. Complaint, par. 13.

6.  The true owners of the Property were Eugene and Josie Tucker. Someone forged their signatures on a deed, dated February 21, 2005, purporting to convey the property to Lion. Merit Title closed the purported sale from the Tuckers to Lion. Someone arranged for imposters to attend the closing and to sign the deed for the Tuckers. Three months later, Merit Title closed the "sale" from Lion to Swain. Complaint, par. 14.

7.  The Tuckers subsequently sued Swain and his lenders to clear the title. Tucker v. Swain, Civil Action # 05-0004890 (D.C. Superior Court). Complaint, par. 15.

8.  SMC and SFC have filed cross-claims against Merit Title and Hopkins. Motion to Dismiss, pages 1-2.

9.  Based on the Tuckers' summary judgment motion, Lawyers Title decided to discontinue the defense and to pay the Lender's loss. It negotiated a $200,000 settlement with SFC, which was represented by Bruce Magazine. It then attempted to settle with SMC for $275,000. This amount represented the appraised value of the property ($475,000), less the amount of the SFC first mortgage ($200,000). Complaint, par. 16.

10. While SMC initially refused Lawyers Title's settlement check, ultimately, SMC accepted the $275,000 payment, on the condition that acceptance of the payment would not preclude SMC from suing Lawyers Title for a larger payment. Complaint, par. 17.

11. On November 16, 2007, SMC brought suit against Lawyers Title to recover the remaining amounts that it believes it is owed. See Exhibit 1, SMC's Complaint in

<u>Southern Management Corp. Retirement Trust, et al. v. Lawyers Title Insurance</u>

<u>Corporation</u>, Law No. 2007-14017 (Circuit Court of Fairfax County, Virginia).

11.    On February 8, 2008, Plaintiff demanded $475,000 from the defendants to indemnify

Lawyers Title, but the defendants never paid.  Complaint, par. 18.

III.    **ANALYSIS**

Merit Title and Hopkins move to dismiss the Complaint based on the *Colorado River*

abstention doctrine because there is allegedly the contemporaneous exercise of jurisdiction over

this dispute by the Superior Court of the District of Columbia.  <u>See</u> <u>Colorado River Water</u>

<u>Conservation District, et al v. United States</u>, 424 U.S. 800, 96 S. Ct. 1236 (1976).  Under the

*Colorado River* doctrine, a U.S. District court may dismiss an otherwise proper case when 1) a

state court determination might moot or differently present a federal constitutional issue, 2) when

a case presents difficult questions of state law bearing on policy problems of substantial public

import, 3) when absent bad faith, federal jurisdiction is invoked to restrain state court criminal

proceedings, and 4) in certain situations involving the contemporaneous exercise of concurrent

jurisdiction either by federal courts or by state and federal courts.  <u>Id</u>. at 424 U.S. at 813 - 818,

96 S.Ct. at 1244 - 1246.

Nevertheless, "[a]bstention from the extension from the exercise of federal jurisdiction is

the exception, not the rule."  <u>Id</u>. at 424 U.S. at 813, 96 S.Ct. at 1244.  It is "an extraordinary and

narrow exception to the duty of a District Court to adjudicate a controversy properly before it."

<u>Id</u>.  Moreover, the "pendency of an action in the state court is no bar to proceedings concerning

the same matter in Federal court having jurisdiction.  <u>Id</u>. at 424 U.S. at 817, 96 S.Ct. at 1246.  In

4

deciding whether to dismiss a case based on the abstention doctrine, "no one factor is necessarily determinative" and "only the clearest of justifications will warrant dismissal." Id. at 424 U.S. at 818-819, 96 S.Ct. at 1247.

The D.C. Circuit reviewed the abstention doctrine most recently in Handy v. Bransford, et al, 325 F.3d 346 (D.C. Cir. 2003). In Handy, the D.C. Circuit reversed the trial judge for failing to weigh the effect of parallel litigation on the efficiency of the judicial system against the district court's primary obligation to exercise its jurisdiction. The D.C. Circuit emphasized that the district court may only decline jurisdiction in "exceptional circumstances." Id., 325 F.3d at 352. The district court may do so "only after weighing a number of factors, including the inconvenience of the federal forum, the order in which the courts assumed jurisdiction, the desirability of avoiding piecemeal litigation, whether federal or state law controls, and whether the state forum will adequately protect the interests of the parties." Id., 325 F.3d at 352. With no one factor determinative, the district court must take into account the combination of factors cited above and weigh them against its obligation to exercise jurisdiction. Id., at 353. Only "truly exceptional circumstances" will authorize a federal court to stay or dismiss a federal action in favor of concurrent action before the Superior Court. Id. Finally, the district court must weigh the balance "heavily" in favor of the exercise of jurisdiction. Id.

In analyzing this case, the court must first ask itself whether there is a concurrent or parallel case pending in the Superior Court. While Lawyers Title acknowledges the existence of Tucker v. Swain, civil action #05-0004890 (D.C. Superior Court), at the time the defendants filed their motion to dismiss, Lawyers Title was not a party to that litigation, it is not paying any

lawyer to represent any party in that litigation, nor has the Superior Court granted whatever motion the defendants have filed to join Lawyers Title in the Superior Court litigation. Thus, there is no concurrent or parallel litigation to this case in the Superior Court, at least at the time of the filing of this motion. As there is no concurrent or parallel litigation in the District of Columbia, this Court has no basis upon which to dismiss this case on the basis of the <u>Colorado River</u> abstention doctrine.

Next, Lawyers Title disputes the defendants' assertion that Lawyers Title seeks the same remedies in this case, as SMC and SFC seek in the Superior Court litigation. First, the defendants did not attach a copy of SMC and SFC's cross-claims to their motion to dismiss. They attached a copy of Lawyers Title's complaint against the defendants. So, we cannot compare SMC and SFC's cross-claims with Lawyers Title's Complaint, side by side. Upon information and belief, both SFC and SMC believe they sustained additional damages beyond those reimbursed by Lawyers Title. Lawyers Title settled its disputes with SFC. But, SMC refused to settle and has even sued Lawyers Title to recover its alleged additional damages. That SMC and SFC have continued the Superior Court litigation against the defendants after Lawyers Title's partial payment of their perceived losses by Lawyers Title is no surprise. Doubtless, they seek reimbursement for their additional damages not covered by the title policies. In any event, just because SMC and SFC continue to litigate against the defendants in Superior Court does not mean the <u>Tucker v. Swain</u> litigation is a concurrent or parallel proceeding to this case. Accordingly, this Court should deny the motion to dismiss or to stay.

6

If this court extends the meaning of concurrent or parallel to include a case in which Lawyers Title is not even a party, such as the <u>Tucker v. Swain</u> litigation, then this Court must apply the <u>Handy</u> factors in deciding whether to dismiss this litigation. Each is analyzed in turn.

First, the defendants themselves acknowledge there is no inconvenience to any party or witness by having the case remain in this court. Defendants' Motion to Dismiss, page 4, note 4. This factors weighs against abstention.

Second, this Court first assumed jurisdiction over the dispute between Lawyers Title and the defendants. The Superior Court has not yet exercised jurisdiction over this case. In fact, the Superior Court will have to grant the defendants' motion to join Lawyers Title as a party before the Superior Court has any jurisdiction over this case. This factor weighs against abstention.

With respect to the desirability of avoiding piecemeal litigation, this litigation is somewhat different. Section 4 of the Agency Agreement requires the Agent to indemnify Lawyers Title for all of its losses in this matter. Thus, Count I of the Complaint states a simple indemnity claim. There is no reason why Lawyers Title should have to litigate its indemnity claim against the agent in the same proceeding as other parties' claims. Thus, this factor weighs against abstention.

State law controls this action. This factor would weigh in favor of abstention.

Finally, and perhaps most importantly, the state forum would not adequately protect Lawyers Title's interests, if this Court were to dismiss the case. Brenda Hopkins closed the underlying transaction on May 13, 2005. A three year statute of limitations applies to this action. D.C. Code sec. 12-301. Thus, the statute of limitations for Lawyers Title's claims

7

against the defendants expired on May 13, 2008. If this Court were to dismiss this case and Lawyers Title were to re-file this action in the Superior Court, the Superior Court would likely rule that the re-filed case is barred by the statute of limitations. This factor weighs heavily against abstention.

The combination of the factors cited above, especially the harm to Lawyers Title, should weigh heavily against an application of the abstention doctrine. Furthermore, this Court's obligation to exercise jurisdiction also weighs heavily against an application of the abstention doctrine. Together, the weighing of combination of factors and this court's obligations demand that this court deny the motion to dismiss or to stay the litigation.

Finally, there is no reason why this Court should stay this litigation until SMC and SFC have finished litigating their claims against the defendants.

WHEREFORE, Lawyers Title, by counsel, respectfully requests that the Court deny the Motion to dismiss or to stay. If the Court grants the motion due to the abstention doctrine, the court should transfer the case to the D.C. Superior Court to avoid prejudicing Lawyers Title, if it has any authority to do so.

Respectfully submitted,

/s/ Christopher A. Glaser
Raighne C. Delaney, D.C. Bar #454761
Christopher A. Glaser, D.C. Bar # 463583
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, 7th Floor
Arlington, VA 22201
(703) 525-4000
Counsel for Plaintiff

8

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing pleading was served by facsimile and by U.S. mail, first class mail, postage prepaid, this 26th day of March 2008, on:

Kenneth D. Bynum
Bynum & Jenkins, PLLC
901 North Pitt St., Suite 320
Alexandria, Virginia 22314

<u>/s/ Christopher A. Glaser</u>
Christopher A. Glaser

O I

Served 11-27-
'07

# IN THE CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

2007 NOV 16 PH 2:48

CLERK, CIRCUIT COURT
FAIRFAX, VA

| | |
|---|---|
| **SOUTHERN MANAGEMENT CORP.** : <br> **RETIREMENT TRUST** : <br> **1950 Old Gallows Road, Suite 600** : <br> **Vienna, Virginia  22182** : <br> : <br> **and** : <br> : <br> **DAVID H. HILLMAN, TRUSTEE** : <br> **1950 Old Gallows Road, Suite 600** : <br> **Vienna, Virginia  22182** : <br> : <br>     **Plaintiffs** : <br> : <br> **v.** : <br> : <br> **LAWYERS TITLE INSURANCE** : <br> **CORPORATION** : <br> **101 Gateway Centre Parkway** : <br> **Gateway One** : <br> **Richmond, Virginia 23235** : <br> : <br>   **Serve: Michelle H. Gluck** : <br>       **Resident Agent** : | **Case No.:** <br><br> **2 0 0 7   1 4 0 1 7** |

## COMPLAINT

The Plaintiffs, SOUTHERN MANAGEMENT CORPORATION RETIREMENT

TRUST and DAVID H. HILLMAN, TRUSTEE, by and through undersigned counsel, Glassman,

Michael & Winer and Stephen C. Glassman, Steven A. Michael and Michael Winer hereby file

this Complaint against Defendant,  LAWYERS TITLE INSURANCE COMPANY, and as

grounds therefore, state as follows:

## PARTIES AND JURISDICTION

    1.    Plaintiff, Southern Management Corporation Retirement Trust ("SMC"), is a trust

organized and operated under the federal pension law with its principal place of business located

**EXHIBIT**

tabbies

1

at 1950 Old Gallows Road, Suite 600, Vienna, Virginia 22182-3933. SMC was the lender of a second deed of trust loan in the principal sum of $500,000 (the "Loan") to David Swain ("Swain"). The loan was secured by a Deed of Trust on an improved parcel of land located at 1819 10th Street, NW, Washington, DC (the "Property").

2.      Plaintiff, David H. Hillman, Trustee ("Trustee"), is the Trustee of the pension trust and the Trustee named in said Deed of Trust for the benefit of the lender, SMC. The Trustee is a resident of the Commonwealth of Virginia.

3.      Defendant, Lawyers Title Insurance Corporation ("Lawyers"), is a Virginia Corporation, organized and existing under the laws of the Commonwealth of Virginia with its principal office located in Richmond, Virginia. Lawyers, among other activities, is in the business of providing title insurance to protect lenders' lien rights on properties financed in various real estate transactions.

4.      Jurisdiction and venue are applicable pursuant to the Code of Virginia, Article, Sections 8.01-328.1& 8.01-262.


## FACTS COMMON TO ALL COUNTS

5.      On or about May 13, 2005 (the "Closing Date") Swain allegedly purchased the Property for a purchase price of $810,000 and secured the Loan among other secured interests,with a purchase money second deed of trust secured on the Property.

6.      Merit Title Insurance Co. ("Merit"), acting as agent for Lawyers, conducted the settlement on the Closing Date at its offices in the District of Columbia.

7.      As part of the transaction and in order to protect its interests under the Deed of Trust, lender's title insurance was purchased, on the Closing Date, from Lawyers, through Merit.

The title Insurance provided full coverage of the loan in the amount of $500,000. As part of the settlement, Lawyers collected premiums and sold title insurance equal to the purchase price of $810,000.

8.     The title insurance covering the second was purchased to protect SMC from any flaw in title or encumbrance affecting the validity of SMC's second deed of trust lien on the Property.

9.     On or about June 4, 2006, approximately 13 months after the Closing, SMC became aware of litigation to quiet title of the Property pending in the Superior Court for the District of Columbia; to wit, *Tucker v. Swain, et al.*, Case No. 2005 CA 004890 B.

10.     The initial Summons and Complaint had been filed on or about June 24, 2005, almost one year before SMC became aware of the law suit. The law suit did not name either SMC or its Trustee on its Deed of Trust as party Defendants or as real parties in interest.

11.     The substance of the Complaint in *Tucker v. Swain,* was that the Tuckers alleged that they discovered their fee title to the property was wrongfully conveyed to Hetrick without their knowledge or consent. As part of their Complaint to quiet title, the Tuckers sought to void all deeds, liens, and encumbrances on the property that had resulted simultaneously with or subsequent to the fraudulent transfer of title, including SMC's second deed of trust lien.

12.     The underlying facts of the Tuckers' Complaint were as follows:

A. Eugene Tucker ("Tucker"), survivor of his first wife Bertha, was the fee owner of the Property;

B. Eugene Tucker, remarried, marrying Josie Walters Tucker;

C. On February 21, 2005, a forged deed was purportedly executed by Tucker, to convey title to the Property to Tucker and Josie Walters Tucker, his wife, as Tenants by

the Entirety;

    D.  On February 21, 2005, a deed was purportedly executed by Tucker and his wife, Josie, to convey title to the Property to Lion Real Estate Development and Management, LLC ("Lion");

    E.  The Tuckers denied signing either deed executed on February 21, 2005, asserted that no one was authorized to sign on their behalf and they never agreed to sell or convey the property to Lion or any other person or entity;

    F.  Lion, owned by Steve Hetrick ("Hetrick"), allegedly purchased the property from imposters for a purchase price of $120,000 on February 21, 2005;

    G.  The Tuckers deny being at the settlement and deny receiving any sale proceeds;

    H.  On May 13, 2005, Swain purchased the property from Lion for $810,000;

    I.  In order to secure the funds to close on the purchase Swain borrowed $200,000 from SFC, LLC ("SFC"), secured by a first deed of trust, $500,000 from SMC, secured by a second deed of trust on the property and $110,000 by way of a Hetrick's take back third deed of trust secured by the property;

    J.  Prior to closing, Merit contacted an authorized officer of Lawyers requesting permission to issue title insurance of $810,000, representing the value of the Property based upon the purchase price; and

    K.  Lawyers approved Merit's request to insure the title in the amount of $810,000.

13.    At all times pertinent, SMC was of the belief that its loan was being made to Swain for the purchase of the Property and Swain was to become holder of the record title to the

Property by a deed from Lion.

14.    Close in time to the filing of the Tuckers' quiet title civil action on June 4, 2005,

Lawyers became aware that the factual circumstances alleged in the Tucker Complaint would

give rise to substantial insurance claims and other foreseeable damages as a result of the

fraudulent conveyances.

15.    Lawyers, exercising bad faith, elected to withhold the information of the suit from

its insured, SMC.

16.    Immediately upon discovering the existence of the Tucker law suit on June 4,

2006, and noting that legal title to the Property and the validity of the SMC Deed of Trust could

be in jeopardy, SMC by written notice, made a claim for coverage under the purchased Lawyers'

title insurance. The notice requested Lawyers to fully protect and defend SMC's interest in the

Tuckers law suit.

17.    Lawyers acknowledged that SMC was insured and entitled to be defended in the

Tucker law suit.  Initially, taking the position that the Tuckers law suit would settle, Lawyers

assigned counsel merely to monitor a proposed settlement.

18.    Subsequently, when it became obvious that settlement would not be

accomplished, Lawyers retained and provided counsel to SMC to defend and protect SMC's

interest in the Tucker lawsuit.

19.    By failing to advise SMC of the pending law suit at the time it was originally

filed, Lawyers deprived SMC of its right to timely protect its interest under its Note, Deed of

Trust and personal guaranties with Swain and Hetrick; thereby unreasonably delaying and

preventing any collection of the indebtedness.

20.    During the period of time Lawyers withheld its knowledge of the pendancy of the

quiet title action from SMC and delayed asserting a defense in the Tucker law suit, the Property remained vacant and its physical condition deteriorated, causing a diminution in the value of the Property.

21.    On or about November 8, 2006, SMC and Hillman were named as Defendants in the Tucker lawsuit.

22.    Through discovery in the Tucker case it became apparent to all parties in the litigation that the Deeds transferring title to Lions were forged documents, and, thus, defeated the validity of the SMC lien on the Property.

23.    When SMC demanded payment of its loss under its title insurance coverage, Lawyers, on or about March 28, 2007, responded by tendering only the sum of $275,000 as full and final settlement of SMC's claim.

24.    In so doing, Lawyers asserted that based on a recent appraisal (the "Lawyers Appraisal"), commissioned in February, 2007, the total value of the Property as of May, 2005 was $475,000; far less than insured amount or the appraisal produced by Swain at or near the time of closing. This assertion is contrary to the valuation accepted by Lawyers and its agent, Merit Title at the time of the loan closing when Lawyers and its agent Merit accepted premiums for $810,000 of title insurance, inclusive of SMC's lender's coverage of $500,000.

25.    Lawyers paid SFC the full amount of its lenders insurance policy under the First Deed of Trust, in the sum of $200,000, and determined SMC was only entitled to a settlement payment of $275,000,

26.    The payment tendered to SMC was rejected and returned to Lawyers on April 6, 2007. Thereafter, on May 10, 2007, SMC demanded that Lawyers pay the full amount of the insurance coverage.

27.    In bad faith, On June 1, 2007, Lawyers advised SMC it would no longer be responsible for the defense of SMC in the Tucker litigation and that SMC would have to assume full legal responsibility for that defense.

28.    On or about June 7, 2007, Lawyers, once again, tendered a check for $275,000; however, on this occasion, Lawyers advised SMC to accept the tendered check without prejudice while reserving SMC's rights to pursue the balance of its claim.

29.    SMC accepted the $275,000 with the reservation of its right to pursue all claims it may have against Lawyers.

30.    SMC has assumed responsibility for its own defense and prosecution of previously filed cross claims in the Tucker law suit.

31.    SMC has incurred and will continue to incur costs and legal fees in the Tucker case. As well, SMC has incurred and will continue to incur costs and legal fees in pursuing its claims against Lawyers.

32.    On or about June 28, 2007, the Superior Court for the District of Columbia entered partial summary judgment in favor of the Tuckers finding Eugene Tucker to be the legal owner of the Property. In so doing the Court held that the signature of Eugene Tucker found on the February 16, 2005 Deed, recorded on March 11, 2005, among the land records of the District of Columbia as Document No. 2005034464, was a fraudulent conveyance. The Court's action voided various Deeds, Deeds of Trust and other subsequently filed liens and encumbrances, including but not limited to the Deed that had vested title and ownership in David Swain, and SMC's Deed of Trust.

## COUNT I

## (BREACH OF CONTRACT)

33.    Plaintiffs incorporate by reference paragraphs 1 through 32 of the Complaint as set forth fully herein in this Count I.

34.    SMC has an insurance contract with Lawyers.  Under this contract SMC is entitled to lenders title insurance coverage in the amount of $500,000.

35.    Lawyers breached its obligations under its insurance contract with SMC by failing to pay SMC the full amount of the coverage; $500,000.

36.    As a consequence of Lawyers' breach of the insurance contract SMC has incurred damages as follows:

A.  Compensatory damages for the balance of the insurance coverage purchased; to wit,  $225,000;

B.  Compensatory damages in an amount to be determined for depriving the Plaintiffs of interest due under its loan from the date Lawyers knew of the claim but failed to advise Plaintiffs until such time as Plaintiff's claim is paid in full;

C.  Compensatory damages in an amount to be determined for legal fees and costs in that Plaintiffs have been required to pay their counsel to protect their interests and to pursue their claims against Lawyers which would not have been incurred had Lawyers paid the claim when it was first put on notice of the Tuckers' action.

D.  Compensatory damages in an amount to be determined for legal fees and costs in that the Plaintiffs have been forced to assume the defense of and pursue the pending cross-claims filed in the Tucker law suit.

E.  Punitive damages because the actions of Lawyers were in bad faith, without

legal justification, in a manner amounting to willful and wanton disregard of Plaintiffs rights.

## COUNT II.

## (BREACH OF GOOD FAITH DEALING)

37.    Plaintiffs incorporate by reference paragraphs 1 through 32 of the Complaint as set forth fully herein in this Count II.

38.    Defendant breached its duty to exercise good faith in the conduct of its business relationship with Plaintiffs by acting in furtherance of its own interest, with intentional disregard of the financial interests of the Plaintiffs; specifically, by failing to timely inform Plaintiffs of the existence of the Tucker law suit, by abandoning SMC by cutting off representation to it in the Tucker lawsuit and by failing to pay all of the proceeds of the policy to SMC upon demand.

39.    Defendant's failures as described above constitute bad faith.

40.    As a result of Defendant's bad faith, without legal justification, in a manner amounting to willful and wanton disregard of Plaintiffs rights, Plaintiffs suffered substantial damages in excess of amounts owed as a consequence of Lawyers breach of the insurance contract.


WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A.    Compensatory damages for the balance of the principal of insurance coverage purchased in the sum of $225,000;

B.    Compensatory damages in an amount to be determined in that Plaintiffs, have been deprived of interest due under its loan from the date Lawyers knew of the claim but

failed to advise Plaintiffs until such time as Plaintiff's claim is paid in full;

    C. Compensatory damages in an amount to be determined for legal fees and costs in that Plaintiffs have been forced to pay their counsel to protect their interests and to pursue their claims against Lawyers which would not have been incurred had Lawyers paid the claim when it was first put on notice of the Tuckers' action;

    D. Compensatory damages in an amount to be determined for of legal fees and costs in that the Plaintiffs have been required to assume the defense of and pursue the pending cross-claims filed in the Tucker law suit;

    E. Punitive damages in the amount of 2.25 million dollars;

    F. Pre-judgment and post judgment interest to be determined;

    G. Attorneys' fees to be determined;

    H. Court costs and expenses; and

    I. Such other and further relief as justice requires.

November 16, 2007

Respectfully submitted,

GLASSMAN, MICHAEL & WINER

By: _____
Stephen C. Glassman   # 01206
Steven A. Michael     # 38077
Michael E. Winer     # 38081
1950 Old Gallows Road, Suite 700
Vienna, Virginia 22182
(703) 902-9500
(703) 902-9501 FAX
sglassman@gmwlaw.net
mewiner@gmwlaw.net
Attorneys for Southern Management Corporation
Retirement Trust and David H. Hillman, Trustee